**196**

STATE of Missouri, Respondent,

v.

Gary KELLER, Appellant.

Nos. 56607, 56700.

Supreme Court of Missouri,
Division No. 1.

Oct. 11, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Lewis E. Pierce, Pierce, Duncan, Hill & Russell, Kansas City, for appellant.

HOUSER, Commissioner.

Gary Keller, convicted by a jury of stealing hogs and sentenced to 5 years' imprisonment, has appealed, claiming that the evidence was not sufficient to support a verdict of guilty.

Accepting as true all evidence of record, whether direct or circumstantial, tending to incriminate him, drawing all inferences favorable to the State that can reasonably be drawn therefrom and disregarding all contrary evidence and inferences, State v. Chase, Mo.Sup. en Banc, 444 S.W.2d 398, 401, we find the evidence insufficient to convict this appellant of the crime with which he is charged.

The State's evidence tended to prove these facts: John and Lola Browning were awakened at their farm home in Henry County at 2 a. m. by a stock truck "going by." The truck and a passenger automobile coming from the other direction stopped opposite each other, down the road. The two vehicles then proceeded to the adjoining farm, owned by Fred Eye, where Mr. Eye kept 115 hogs. The barn and buildings on the Eye property, located about ¾ mile west of the Brownings' farmhouse, were visible to the Brownings, who observed the

lights of the truck back up to a loading chute and by watching its lights observed the automobile drive in the property, turn around and stop headed back toward the road. Flashinglights were observed. The Brownings called Mr. Eye and a deputy sheriff, both of whom proceeded toward the Eye feed lot in separate vehicles. As the deputy and Mr. Eye approached the feed lot they observed the automobile (a black 1967 Ford) drive out of the feed lot and head east (toward the Browning farm). In the meantime, Mr. Browning had proceeded west in his pickup truck to a point a quarter of a mile from his home, where he stopped his truck and blocked the road. As the deputy approached the Ford from the rear he turned his light on, the doors flew open and two men jumped out. One was short, about 5 feet 6 inches in height. The other was about 6 inches taller. They had on dark clothes. The shorter man wore dark jeans and a checkered shirt. The deputy did not know either of the men. The deputy alighted, cried "halt," drew his revolver, and fired over their heads. The shorter man turned and looked the deputy "square in the face." The deputy later learned that the name of the shorter man was Carl Edward Jackson, who is 5 feet 6 inches tall. The deputy did not see the face of the taller man. The two men ran through the field toward the south and made their getaway. The taller man stumbled and fell in the field soon after he fled from the automobile. The driver of the Ford, a man named Cole, was captured at the scene. Returning to the feed lot the deputy examined the truck, which was backed up to the chute. Inside were three hogs. Other hogs were in the loading chute and gated in the barn. It had been raining earlier that night and the ground was muddy. The deputy saw three sets of tracks of human beings at the hog lot * * * "average shoe tracks, no distinctive tread on any of the soles," about a 9-size shoe. The deputy called the Sheriff, and the roads and fields were searched for the two escapees, following the men's tracks. One set of tracks was made "by a

bigger man than the other, a bigger stride." Both sets of tracks "appeared to be about the same size." The tracks went south a quarter of a mile, then southwest, then west a half mile, then southwest again across the highway south of a roadside park. The park is 2–2½ miles distant from the place where they left the automobile. The officers reached the park about 9:30 that morning, and called off the search about 10:30 a. m., when they could no longer follow the tracks. The officers drove around the area that day, looking in plowed fields for tracks, etc. The next day the deputy received a telephone call about two men walking on Highway 52. Thirty hours after the getaway and at 4:20 p. m. he saw two men on Highway 52 about 3 miles west of the park. They were walking, trying to "thumb a ride." The deputy recognized one of them as the man whose face he saw early that morning (later identified as Jackson). Jackson was wearing dark trousers and a checkered shirt. He was wet and muddy. The other man (this appellant) was dressed in jeans and wore a dark shirt. He was also wet; his clothes were soiled with mud; they had alfalfa hay or some kind of hay on them "where it looked like he slept in a barn"; there was hair on his clothes and there was an odor of the hog lot—the smell of hog manure. The men were arrested and brought to the county jail.

We disregard the testimony that defendant was not involved in an attempt to steal hogs at the time and place mentioned; that defendant and Carl Jackson were playing cards a mile or two north of Harrisonville and that defendant was not in Henry County at that time; that defendant's clothes were muddy because he accidentally drove a girl friend's automobile in a ditch, and that he and Jackson were on their way back to Kansas City when they were arrested.

■■ Since this is a circumstantial evidence case the State in order to obtain a conviction was required to prove facts and

circumstances consistent with each other, consistent with the guilt of appellant, and inconsistent with any reasonable theory of his innocence. State v. Craig, Mo.Sup., 406 S.W.2d 618, 621. The State failed to meet this burden. The State adduced evidence indicating that Carl Jackson was one of the participants in the events surrounding the attempt to make away with the hogs, and proved that 30 hours later appellant was found in the company of Jackson, 3 miles from where the officers lost the tracks; that the person who fled with Jackson wore dark clothes and when arrested appellant was wearing dark clothes; that it had been raining and was muddy and when arrested appellant's clothing was muddy; and that there was hay and hair on appellant's clothing, which smelled like hog manure. The facts and circumstances proved by the State arouse suspicion, and except in minor and inconsequential particulars are consistent with each other and with the guilt of appellant, but are not inconsistent with any number of reasonable theories of his innocence. The crux of the case against appellant was his identification yet Mr. and Mrs. Browning, Mr. Eye, and the deputy all disclaimed having seen appellant at the scene of the crime; none of them could identify appellant as one of the men who jumped out of the fleeing car, or who fled into the field. The State's theory is that appellant was the taller of the two men who fled but no one at the scene saw the face of the taller man; no one identified appellant as the taller man, and none of the State's witnesses could identify appellant as having been present. To the contrary, Mr. and Mrs. Browning, Mr. Eye and the deputy all disclaimed having seen appellant at the scene. The "taller" man who fled was described as having been six feet in height, or six inches taller than Jackson who is 5 feet 6 inches in height, but there is no evidence in this record as to appellant's height, or whether he is taller or shorter than Jackson. There was no testimony as to the age, build and shape, or the weight, of the "taller" man, or of appellant. Evidently there were myriads of footprints around the feed lot and in the field, made by a size 9 shoe, plainly visible and apparently smooth, as they bore no characteristic mark, but no plaster casts were made of these tracks, and there was no evidence that appellant was wearing smooth-soled shoes when apprehended, or that he wears a 9-size shoe. The attempt to identify appellant by comparing the witnesses' descriptions of the clothing worn by the "taller" man with the clothing appellant was wearing when arrested, by showing that both wore dark clothes, was weak and insufficiently particular to make a submissible case. The fact that particles of hay were observed clinging to appellant's clothes 30 hours later is not incriminatory. There was no evidence that the hairs observed on his clothes were hog hairs. The mere fact that his clothes were muddy was of little significance, in the absence of a showing that the mud had the same make-up and characteristics as mud found at the scene. There was no showing that appellant's shoes were muddy, or that the mud on them was comparable to mud found at the feed lot or in the fields where flight took place. No fingerprints were found at the scene or on the vehicles. No effort was made to connect appellant with the two vehicles used by the would-be thieves. The fact that appellant was found only a few miles from the scene of the crime pales into insignificance when it appears that he was arrested 30 hours after the events described. If we reject the testimony that at the time in question Jackson and appellant were playing cards at some distance from the scene and accept as a fact that Jackson was one of the two men who fled, the State's evidence is nevertheless not inconsistent with the theory that appellant was elsewhere at the time. It is an altogether reasonable hypothesis under the evidence in this case that appellant was not the other man who fled; that appellant and Jackson encountered each other either by prearrangement or by chance sometime during the 30 hours following the crime and merely happened to be in each other's company when apprehended. The fact that ap-

pellant was with Jackson at that time does not incriminate appellant, even if Jackson was guilty of the crime. In State v. Irby, Mo.Sup., 423 S.W.2d 800, Irby was shown to have been at the scene of the crime immediately before it occurred, and to have been in the company of another who was directly implicated in the commission of the crime, both immediately before and a short time after the crime took place. Two men were seen fleeing from the scene but witnesses failed to identify Irby as one of fleeing subjects. Notwithstanding Irby's opportunity to have participated in the commission of the crime, and his close association with the person directly implicated, both before and afterwards, and the suspicious circumstances shown, Irby's conviction was reversed and he was discharged because the inference that he was one of the two participants was not the only reasonable inference arising from the State's evidence; the facts and circumstances were not inconsistent with his innocence.

There is less incriminating evidence here than in Irby. There was no proof that this appellant was present at the scene of the crime and therefore had an opportunity to participate. There was no showing, as in Irby, that appellant was in the company of the implicated person before and immediately after the commission of the crime. Even where this is shown something more than mere presence must be proved, as pointed out in Irby, and in the numerous cases cited. 423 S.W.2d, l. c. 803. And see State v. Castaldi, Mo.Sup., 386 S.W.2d 392. All the State proved was suspicious circumstances and association with an implicated person 30 hours after the crime occurred. Guilt may not be predicated upon the circumstances and association shown in this case. The motion for a directed verdict of acquittal should have been given.

Judgment reversed and appellant ordered discharged.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.