**STATE of Missouri, Plaintiff-Respondent,**

v.

**Richard D. COX, Defendant-Appellant.**

**No. 35290.**

Missouri Court of Appeals,
St. Louis District,
Division One.

April 16, 1974.

Clifford J. Proud, Nangle & Proud, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson

City, Gene McNary, Pros. Atty., Karl J. Keffler, Asst. Pros. Atty., Clayton, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

SIMEONE, Acting Chief Judge.

Defendant-appellant Richard D. Cox was convicted of stealing property less than a value of $50.00 owned by Patrick Hanley of 852 Townhouse Avenue in St. Louis County. He was sentenced to serve one year in the St. Louis County jail. He appeals. We affirm.

Taking the evidence in the light most favorable to the State, a jury could reasonably find the following. During the early morning hours of May 31, 1972, at about 4:50 a. m., at a time when it was getting light, Mr. John Throgmorton, who resides at 762 Lamplight Lane in St. Louis County, thought he heard a noise in his garage. He walked to the garage attached to his home and saw "someone coming down the street across my neighbor's lawn." At the closest point, this person was about seven feet away. He saw that the individual was wearing a "white sailor cap and a short blue or gray jacket." He could not observe his facial features but could tell "he was white," "young", about 5'10" tall and weighed about 150 pounds. The person had a flashlight in his hand. The person walked across the street and "shined the light into a car sitting in a driveway." At that point, Mr. Throgmorton called the County Police informing them that he observed a man near the "700 block of Lamplight wearing a sailor cap and a short blue or gray jacket."

Two County Police officers, Edward D. Speakman and Charles W. Stone, each operating his own vehicle went to the area of Lamplight and Townhouse Avenues. Officer Speakman was directed to 762 Lamplight by radio dispatch at about 5:00 a. m. The dispatch indicated that a call had been received concerning a suspicious person with the above description.

Officers Speakman and Stone arrived in the area about the same time. Speakman testified he "observed a subject ('a white male, 5–9 or so, wearing blue jacket, blue trousers and a white sailor hat') coming west on Lamplight." When Officer Speakman saw him, the person was carrying a "large mass in front of him," a "big bundle."

The individual was seen to run between two residences on Lamplight (about two blocks from Townhouse) and Officer Speakman started chase. When the person ran between the two houses, the officer lost sight of him. But the officer saw a "car stereo and some [two] speakers lying on the ground between halfway back of the residence and the back fence, and in the corner of the yard, I saw another pile of items including car stereos, clothing, stereo tapes and numerous other small articles. . . . ." The single car stereo was lying separate from the other items.

At this point, Officer Speakman returned to his police car and put out a dispatch containing a description of the individual—"between the ages of 18 to 20, 5–8 to 5–10, 130 to 140 pounds, I believe, wearing a blue jacket, blue pants and a white sailor hat."

Meanwhile, Officer Stone of the County Police Department saw "a young white male walking toward me," wearing a "dark blue jacket, light blue or gray shirt, blue trousers and white sailor hat." When about sixty feet apart, and while Stone was in his car, he saw the individual go between two houses on Lamplight and "as he got into the back yard he pitched the stuff up in the air and climbed over a fence." After he climbed the fence, he disappeared. Stone requested the County Police to send the Identification Bureau and then went around the neighborhood in search of the individual. About two and a half or three blocks away Stone came in contact with the defendant, Cox, at DeVille and Holliday Avenues in the custody of officers of the City of Hazelwood.

Before Stone arrived at DeVille and Holliday, Patrolman Eugene L. Roessler of the Hazelwood Department received a radio dispatch that the County Police were looking for a "white male 18 to 20 years old, wearing a blue jacket and white sailor's hat." Roessler observed an individual fitting this description at a point about six blocks from Townhouse and Lamplight. When the person in the sailor hat and blue jacket apparently saw the Roessler vehicle, he "began to take off running." Officer Roessler gave chase for about two minutes and finally the person stopped. The individual chased (who turned out to be the defendant Cox) stopped at DeVille and Holliday and was apprehended by Roessler. During the chase, Roessler saw the man lose his white hat about a half block before he stopped. When apprehended, he was advised that he was under arrest, "fugitive St. Louis County." Officer Roessler turned Cox over to Officer Stone who "picked him [the defendant] up off the ground after he was apprehended by the Hazelwood officer." Stone returned with the defendant to the 762 Lamplight area where Officer Speakman was. Officer Speakman then informed defendant he was under arrest, advised him of his rights and asked whether he wished to waive them. "He [defendant-Cox] stated he did wish to give up the rights and would make a statement." Speakman asked why he ran, and Cox replied he did not want to get caught. And when asked why he did not want "us to catch him," he replied that "both he and a friend had been in the area since about 2 A.M. taking items from cars, taking items they could sell and get a little money."[1] Speakman also asked if the defendant could tell the officers where he took the items from. Cox replied he did not know but "he could show us." The defendant then left in the company of Stone, while Speakman waited for the Identification Bureau.

When the defendant and Stone left the location on Lamplight, they went to 852 Townhouse where a Chevrolet owned by Mr. Walter L. Hanley was located and there, according to Stone, "Defendant advised me that was one of the cars he had been removing items from during the night."

About 6:30 a. m. Mr. Walter L. Hanley of 852 Townhouse awakened and noticed that the driver's door of the 1964 Chevrolet owned by him but normally driven by his son Patrick, was standing open. He awakened Patrick and they went to investigate. The vent window was forced open and the stereo and two tapes from the glove compartment were missing. Mr. Hanley called the County Police. The stereo had been purchased by Patrick on March 24 for $69.95. The tapes had cost $10.00. The stereo was eventually returned to Patrick.

Eventually on July 10, 1972, an information was filed charging defendant Cox with stealing over $50.00. Defendant was arraigned, an amended information was filed, and on January 17 and 18, 1973, trial was held.

At trial Patrick identified the stereo by matching the serial number on the stereo and the one in his receipt book. Officer Speakman also identified the stereo as the one found on the ground on the night of May 31, as it had the same serial number.

The defendant at trial testified in his own behalf. He testified that he was arrested at the corner of DeVille and Holliday at about "quarter to seven." He said he had spent the night at a friend's—Mat Conely's—house, and the place where the

---

1. This admission was not objected to at the time Speakman testified, but following his direct testimony, counsel objected, stating, "I think those admissions are not relevant to the theft of this stereo with which Mr. Cox is charged. I'll ask for a mistrial on that basis. . . . Nothing that officer just testified to had to do with the theft of this stereo. He's bringing in evidence of other crimes. It is highly prejudicial." The objection was later overruled, the court stating the evidence was "properly received under one of several theories, including the theory of res gestae. . . ."

police saw him was on the way to his house at 719 Lynnhaven Avenue in Hazelwood. At the time of trial, Conely was in the service in Munich, Germany. On that morning he was wearing a blue jacket, over a green jacket, a yellow and black shirt with white checks, gray pants, black belt and brown shoes, but he was not wearing a sailor's hat. When he saw the police, he ran because "every time they see any of us young men out there they stop us, ask us questions, and sometimes they'll take us in." He said that between January and May he had been arrested "for twenty hours 58 times." When arrested, he did not answer any questions and denied he was advised of his constitutional rights.

At the conclusion of the evidence, the court gave among others Instruction No. 3 [2] which informed the jury that if they did not find defendant guilty of stealing over $50.00, but if they find that defendant stole property of a value of less than $50.00, they should assess punishment in the County Jail for not more than one year or fine of not more than $1,000.00, or both. The court also gave Instruction No. 7 [3] which informed the jury that the State has the burden to prove that the defendant was present at the time and place of the offense and if from all the evidence or lack thereof, there is left a reasonable doubt regarding the defendant's presence at the time and place of the offense, the jury should acquit.

The jury found the defendant guilty of stealing property "under the value of $50.00" and assessed his punishment at imprisonment in the County Jail for one year. After motion for new trial was overruled, and allocution given, defendant was sentenced.

On this appeal the defendant contends the trial court erred: (1) in overruling defendant's motion for judgment of acquittal made at the close of the State's case and at the close of the evidence since there was no direct evidence pointing to defendant's guilt; (2)(a) in overruling defendant's objection to the alleged admissions made by defendant which related to crimes other than the one for which he was charged, (b) in admitting police testimony as to the fruits of other unrelated crimes, and (c) in overruling his motion for mistrial; (3) in giving Instruction No. 3 relating to stealing under $50.00 since there was no evidentiary support for the instruction; and (4) in not instructing the jury concerning the defendant's alibi.

The appellant urges that no testimony was provided by the state that placed Cox at the scene of the alleged crime or at the locations where the witnesses allegedly observed a suspect in possession of a bundle or object. The witnesses, he says, could not identify Cox as the suspect they saw on that morning of May 31, 1973. He argues that Patrick Hanley stated that his

2. "INSTRUCTION NO. 3. If you find and believe from the evidence that the defendant is not guilty of Stealing Property Over The Value of $50.00, as defined and explained to you in the preceding Instruction No. 2, but, if you further find and believe from the evidence beyond a reasonable doubt, that on the 31st day of May, 1972, the defendant did wilfully, unlawfully take, steal and carry away from an automobile owned by Walter Leo Hanley, a stereo tape player, the property of his son, Patrick D. Hanley, to-wit: one car stereo, CMC, model 5000, and if you further find and believe from the evidence beyond a reasonable doubt that the said property was the property of the said Patrick D. Hanley, and if you further find and believe from the evidence beyond a reasonable doubt that said property was of the value of less than $50.00,

then you will find the defendant guilty of Stealing Property Under The Value of $50.00, and you will assess his punishment at imprisonment in the County Jail for not more than one year or by a fine of not more than $1,000.00; or by both such fine and imprisonment. Unless you so find the facts to be, you will acquit the defendant."

3. "INSTRUCTION NO. 7. One of the issues in this case on which the State has the burden of proof is whether the defendant was present at the time and place the offense is alleged to have been committed. If all of the evidence, or any lack of evidence, in this case, leaves in your mind a reasonable doubt regarding the defendant's presence at the time and place the offense is alleged to have been committed, then you must find him not guilty.

speakers were never stolen, and the speakers found on the ground with the stereo were not admitted into evidence. He also argues that no officer testified as to any markings on the stereo, nor were the stolen tapes introduced into evidence. From this he concludes that the circumstantial evidence was insufficient to submit the case to the jury or to sustain a conviction; hence it was error to overrule the motions for judgment of acquittal.

■ Direct evidence is not necessary to make a submissible case. Circumstantial evidence is sufficient, but in order to sustain a conviction based on circumstantial evidence, the facts and circumstances must not only be consistent with each other and be consistent with the hypothesis of the defendant's guilt and inconsistent with innocence, but the circumstances must point satisfactorily to guilt so as to exclude every other reasonable hypothesis of innocence. State v. Burnley, 480 S.W.2d 881 (Mo.1972); State v. Walker, 365 S.W.2d 597, 601 (Mo.1963). Evidence that an accused had an opportunity to commit an offense, or evidence which merely raises a suspicion is an insufficient basis for a conviction. Mere presence of an accused at the commission of a felony is insufficient, and while flight is a circumstance to be considered against an accused, in connection with other evidence flight alone is insufficient to sustain a conviction.

Our function is not to substitute our judgment for that of the jury; it is to determine whether there was sufficient evidence to submit the issue to the jury.

■ We believe that there was substantial circumstantial evidence in this case to sustain the conviction and the court did not err in overruling the motions for judgment of acquittal. All the witnesses testified that a young man, white, wearing a white sailor cap and a short blue or gray jacket, was in and about the neighborhood. Mr. Throgmorton identified the clothing; the officers saw the person wearing such clothing carrying a bundle, running be-

tween two houses, and throwing things down, one of which was the stereo identified by Officer Speakman; the Hazelwood officer chased a young man in the same clothing, saw him lose his white sailor hat, and finally caught up with the defendant; the defendant, after being warned of his rights, made a statement and showed Officer Stone the Hanley vehicle where he said he took a stereo. Taking this and other evidence, we believe that the circumstantial evidence was sufficient to submit the case to the jury.

The cases cited by the appellant, State v. Keller, 471 S.W.2d 196 (Mo.1971); State v. Brown, 462 S.W.2d 766 (Mo.1971); State v. Irby, 423 S.W.2d 800 (Mo.1968) and State v. Walker, supra, are distinguishable and not dispositive of the issues here.

For example, in State v. Keller, supra, some thirty hours after an attempt to carry away hogs, defendant was in company of one of the participants who stole the hogs. The evidence showed that the defendant did not fit the description of the companion who escaped. The only proof was that there were suspicious circumstances and association with an implicated person some thirty hours after the crime occurred. Under these circumstances, our Supreme Court held that the circumstantial evidence was insufficient to make a submissible case.

■ Appellant argues that the stereo was not properly identified because "no police officer testified as to any markings placed on [the] stereo." But Patrick Hanley identified the serial numbers on the stereo introduced from his receipt, and Officer Speakman identified the stereo as the stereo he saw at the scene.

Appellant's next complaint is that it was error to permit Officer Speakman to testify that the defendant stated to him, "both he and a friend had been in the area since 2 A.M. taking items from cars, taking items they could sell and get a little money." He also contends, apparently, that it

was error to permit police testimony relating to the "fruits" of other unrelated crimes, i. e., testimony that they saw other stereos, clothing, tapes and other articles. These matters, he argues, relate to crimes other than the one for which he was charged. The trial court ruled that the admission by the defendant was "properly received under one of several theories, including the theory of res gestae. . . . "

Defendant relies in his argument on the general rule that evidence of other crimes is improper and he relies also on the rule that if the statement by the defendant is part of the "res gestae," the statement could be introduced; but to be part of the "res gestae," he contends the statements would have had to be made immediately prior to, during or after the commission of the crime and would have to have been of a spontaneous nature. He relies on State v. Pflugradt, 463 S.W.2d 566 (Mo.App. 1971), "one of the leading cases in Missouri on res gestae" which he states held that "statements of an accused at the time of his arrest are admissible as a part of the res gestae when the arrest was made closely enough to the commission of the offense that the statements were made while the mind was still acting under the exciting cause of the occurrence." Since in this case defendant had time to reorder his thoughts while he was being transported by Officer Stone back to Officer Speakman, his statements, he contends, could not be part of the res gestae.

*Pflugradt* involved a case in which the defendant was charged with assault. Defendant complained because the trial court did not admit his self-serving statement, which indicated he did not commit an assault but rather was aiding the victim. The statement was allegedly made sometime after the event. The Kansas City District, in a comprehensive opinion by Shangler, J., held that the court did not err in refusing to receive in evidence the self-serving statement.

*Pflugradt* dealt with the question of whether the statement should be admitted under the "excited utterance or spontaneous declaration" exception to the hearsay rule, sometimes referred to as "res gestae." "Spontaneous utterances which qualify under the res gestae rule are admissible. . . . And statements of an accused at the time of his arrest are admissible as part of the res gestae when the arrest was made closely enough to the commission of the offense that the statements were made while the mind was still acting under the exciting cause of the occurrence." 463 S. W.2d at 572.

We do not deal here, however, with an excited utterance, but rather with a question of relevancy, i. e. whether the admission of the defendant and testimony of officers tend to prove the commission of the crime for which defendant is charged and the question whether the reference to "other offenses" is admissible under the facts of this case. It is to be noted that the trial court ruled that the admission was properly received under *one of several theories,* including the theory of "res gestae", and not merely on the ground of "res gestae" as contended by appellant.

■ There is no question that the well-established rule is that evidence of the commission of separate and distinct crimes is not admissible unless the evidence has some tendency to directly establish the guilt of the charge for which the defendant is on trial. The well recognized exceptions are that evidence of other crimes is competent to prove the specific crime when it tends to establish motive, or intent, or absence of mistake or accident, or a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other or identity of the person charged. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954); State v. Wing, 455 S.W. 2d 457, 464 (Mo.1970).

■ And another well-recognized rule relating to the admission of other crimes is that where the circumstances are such as to constitute one continuous transaction in the accomplishment of a common design and the crimes are concurrent so that the proof of one cannot be made without a showing of the facts tending to establish the other, the entire facts may be admissible since they are regarded as part of the "res gestae" and therefore all the facts may be admitted. In such circumstances the state is not required to nicely sift and separate the evidence and exclude the testimony tending to prove the crime for which the accused is not on trial when it forms a part of the "res gestae" of the crime charged. State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877 (Mo.1931)—robbery and kidnapping; State v. Shumate, 478 S.W.2d 328, 330 (Mo.1972)—sodomy and rape; State v. Robb, 439 S.W.2d 510, 514 (Mo. 1969). This concept of "res gestae" is altogether different than "res gestae" in the sense of an excited utterance.

■ We believe that the court did not err in permitting the admission of the defendant's statement or the testimony of the officers relating to other items for the reason that despite the general principle that proof of the commission of separate offenses is not admissible, the evidence here was admissible under the exception to show a common scheme or plan of the defendant to steal the other items and furthermore was admissible to show identity of the defendant.

The person wearing the described clothing was seen throwing away various items; the defendant was described as wearing the same or similar clothing, was chased by the Hazelwood police, and when returned to Officer Speakman, the defendant told him that he had been taking items from cars to get a little money. All of this evidence tends to show a common scheme to take items from vehicles and tends to show the identity of the defendant as the person who rid himself of the various items and as the person who stole the items.

The evidence also may have been admissible as a part of the res gestae in the sense of a continuous transaction in the accomplishment of a common design, but we need not decide that issue since we believe the statement and evidence were properly admitted as exceptions to the "other crimes rule" to show a common scheme or plan of the defendant and to show identity of the defendant as the person who committed the theft.

We hold that the trial court therefore did not err in concluding that the evidence was admitted under one of several theories including the theory of "res gestae" in the second sense as used above. As long as the evidence was admissible under any theory there can be no error. State v. Mayberry, 272 S.W.2d 236 [4] (Mo.1954); State v. Garton, 371 S.W.2d 283 [7] (Mo. 1963). The court did not err in overruling the objection to the introduction of the admission against interest and other testimony nor in overruling the appellant's motion for mistrial.

■ Appellant next complains that it was error to give Instruction No. 3 which authorized the jury to find the defendant guilty of stealing less than $50.00 because there was no evidentiary support for the submission. We disagree.

■ When a request is made for an instruction on stealing under $50.00 and all the evidence tends to prove that the property is over the value of $50.00, there is no error in refusing to so instruct. State v. Brewer, 338 S.W.2d 863, 868 (Mo.1960); State v. Craig, 433 S.W.2d 811 (Mo.1968). When the evidence shows that a defendant may be guilty of the greater offense, he is not *entitled* to an instruction on the lesser degree. But if such instruction be given, it is merely error in his favor. State v. Kimbrough, 350 Mo. 609, 166 S.W.2d 1077, 1082 (1942). The defendant cannot com-

plain of the giving of an instruction on a lesser grade of an offense although the evidence tends to show guilt, if at all, of a higher grade. State v. Parker, 321 Mo. 553, 12 S.W.2d 428 (1928).[4]

Here, the evidence shows that the stereo was purchased some three months prior to the loss for $69.95. Since the stereo was some three months old, the jury was entitled to consider whether the stereo had depreciated to an amount less than $50.00; hence the court properly gave Instruction No. 3 on the lesser included offense. In this posture, and in view of the fact that the defendant cannot complain, we believe the trial court did not err in giving Instruction No. 3.

▮▮▮ Finally, defendant complains that he is entitled to an instruction on alibi. Failure to give an alibi instruction where alibi is a defense is error. State v. Slay, 406 S.W.2d 575, 579 (Mo.1966). But the trial court in this case gave an alibi instruction—Instruction No. 7—which told the jury that the State had the burden to prove that the defendant was present at the time and place of the alleged offense, and if all the evidence, or any lack of evidence, leaves a reasonable doubt, the defendant should be acquitted.

This instruction is almost identical to MAI–CR 3.20 on alibi. This point of defendant's is without merit. In the decisions relied upon by defendant which are not dispositive of this case, no alibi instructions were given.

Finding no prejudicial error, the judgment is affirmed.

WEIER and KELLY, JJ., concur.

---

4. "[I]t does not follow that because a defendant is not entitled to such an instruction that it is error of which he can complain when the court does so instruct. . . . § 3952, R.S. '39 and Mo.R.S.A., [§ 545.030(17)] provides that no judgment shall be affected 'because the evidence shows or tends to show him [the defendant] to be guilty of a higher degree of the offense than that of which he is convicted.' The statute thus validates a conviction for a lesser degree of the crime when all the evidence shows he is guilty of the greater, and it has been uniformly construed as extending to the giving of instructions authorizing convictions for lesser included offenses in such circumstances." State v. Gardner, 356 Mo. 1015, 1017, 204 S.W.2d 716, 717 (1947).