STATE of Missouri, Respondent,

v.

Steven Craig THOE, Appellant.

No. KCD 28767.

Missouri Court of Appeals,
Kansas City District.

May 1, 1978.

J. Arnott Hill, Hill & Gamm, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Steven Thoe was convicted of bombing in violation of § 564.560, RSMo 1969, in connection with an explosion in the city hall of Weatherby Lake. After the jury was unable to agree upon punishment the court sentenced Thoe to four years imprisonment.

On this appeal Thoe contends there was insufficient evidence to sustain his conviction. His other points need not be discussed because the insufficiency of the evidence is dispositive of this appeal. Reversed.

The following drawing, which was introduced as Exhibit 23 at the trial, will simplify a description of the vicinity of the bombing.

Blair Road runs generally east and west and 71st Street runs north and south. The city hall of Weatherby Lake is located as indicated. The building was of frame construction and had the general appearance of a small residence. Lengthwise the building ran in a general north-south direction.

Shortly after midnight on the night of October 30, 1975, and the early morning of October 31, an explosion blew out the entire west end of the city hall and did considerable damage to the building. Tests performed on a piece of paper and a rag found in the crater of the explosion indicated the

explosion was caused by commercial dynamite.

Mr. and Mrs. Gaul lived at 7100 Blair Road. Mrs. Gaul testified she heard the explosion and immediately got her husband out of bed and they both ran outside. Within two or three minutes after the explosion they heard someone running through the bushes along the "x" marks on Exhibit 23 to the rear and south of the house at 7107 Blair Road. Mrs. Gaul stated after they heard the footsteps they later saw a young man run behind 7101 Blair Road and then run west on 71st Street. Both Mr. and Mrs. Gaul described the young man as about 5'11" to 6'1", with shoulder length hair, thin build, and wearing glasses. Mrs. Gaul saw the boy for less than thirty seconds at the intersection of 71st Street and Blair Road.

After the boy ran west on 71st Street, the Gauls saw a car which made a loud noise traveling west on 71st Street. There was one person in the car but Mrs. Gaul did not think the boy she had seen running was the occupant of the car. She did not identify the occupant. Mrs. Gaul could not identify Thoe as the boy she saw running. Neither could her husband identify Thoe.

Max Rutledge testified that he lived at 6931 Blair Road. He likewise heard the explosion and went outside. He saw a boy running who was between the ages of 17 and 23 years, 5' 10" to 6' 1" in height, weighing 140–145 lbs., slim build, with long hair and dark rimmed glasses. Rutledge saw the boy run west on 71st Street and then south between 9613 and 9619 71st Street. About three or four minutes after Rutledge saw the boy running, he saw an automobile with one occupant enter the intersection of 71st Street and Blair Road. It is not clear from which direction the car had come. Rutledge could not identify Thoe as the person he had seen running or in the car.

Testimony indicated on October 30, 1975, Thoe was 5' 10" in height, slender build, shoulder length hair, and wore wire rimmed glasses. Although his age was not given, he appeared as a witness and the jury could observe him. A fair inference from the evidence is that he was of the age of the boy seen running. He lived in Weatherby Lake.

Agents of the Federal Alcohol, Tobacco and Firearm Bureau (ATF) investigated the bombing. In their investigation they found a knife on the morning of October 31 located at the point indicated on Exhibit 23 between the fence surrounding the open area south of city hall and Blair Road. The fence next to the knife appeared to have been depressed. The knife was described as about eight inches long with a four inch blade. The handle was of brown plastic with a stag deer design. When found the blade had rust on it. The knife was described as a mass production model with no personalized features. No tests were run on the knife to determine the presence of fingerprints or dynamite residue.

The agents also found a cardboard box at the place indicated on Exhibit 23 between 7107 and 7101 Blair Road. Tests later performed on the box showed it had contained commercial dynamite. No connection between Thoe and the box was shown.

ATF agents requested Thoe to appear voluntarily on November 3 for questioning and he did so. When asked if he owned a hunting knife Thoe stated he did. When he was shown the knife found between the open field and Blair Road, Agent Randol said Thoe stated "it sure looked like his knife, that there couldn't be many more like that around."

Agent Randol inquired where Thoe had kept his knife and Thoe stated he kept it in the trunk of his car. He said he had not loaned the knife to anyone although his brother Terry had use of the car. Thoe stated he had not seen the knife in about two months.

A picture of a Chevrolet Malibu 2-door was introduced in evidence and identified as one similar to the car seen on 71st Street shortly after the man was seen running. This picture was further identified as being a car similar to one owned by Russell Jones, a friend of Thoe.

ATF agents obtained a search warrant and searched the room occupied by Thoe in his parents' home in Weatherby Lake. A small section of fuse was found which was described as a type used to detonate explosives. The fuse was not tested for the presence of chemicals used in dynamite. Also found were looseleaf notebook pages on which Thoe had written chemical formulas, among them one for gun powder and a reference to a catalog for "Things That Go Boom."

A forensic chemist employed by ATF testified there are certain chemicals found in commercial dynamite. Such chemicals adhere to the hands of a person handling dynamite. The presence of such chemicals can be detected by swabbing the hands with a solution which will transfer the chemicals to a cotton swab. The chemist was given the swabs with which Thoe's hands had been tested as well as scrapings from under Thoe's fingernails. The chemist concluded the swabs had been contaminated prior to the time they were applied to Thoe's hands. For this reason he was unable to state positively that dynamite chemicals were present on Thoe's hands. However, the chemist stated the chemical residue from commercial dynamite was found in a greater quantity in the fingernail scrapings than in the hand swabs and based on this, he had the opinion Thoe had handled commercial dynamite on or about the date of the explosion.

Thoe did not dispute the above evidence. The only factual dispute presented to the jury concerned Thoe's alibi. In its case in chief, the State introduced evidence through ATF agents that Thoe stated he had been at Robin Morgan's house on the night of October 30–31. Thoe stated he met Russell Jones there and played chess. The State produced Robin Morgan who stated Thoe was at her house only for about 15 minutes about 8:00 P.M. on October 30. She stated Jones was there until about 11:00 P.M. She said she did not see Thoe at her house after about 8:15 P.M.

Russell Jones was called in rebuttal and he stated he met Thoe at Robin's house at about 11:00 P.M. on October 30, and played a game of chess with Thoe. Jones left Robin's house about 11:45 P.M. and Thoe was leaving at the same time. Jones stated they left in separate cars. Jones denied he and Thoe planned to blow up the city hall.

Although the State undertook to set up an alibi in its case in chief and then disprove it, such evidence does not aid the State in meeting its burden of proof to produce substantial evidence from which the jury would be authorized to find Thoe guilty. The alibi was unrelated to the bombing incident. The question the jury was to decide was whether or not Thoe was guilty of placing explosives and blowing up the city hall. The jury was not called upon to decide whether or not Thoe was at Robin Morgan's house during the time he told the agent he was there.

■ It is obvious the State's case is based upon circumstantial evidence. The well worn rule by which the sufficiency of the evidence in such a case is to be measured is stated in *State v. Franco*, 544 S.W.2d 533, 534[1–4] (Mo. banc 1976) as follows: " '[T]he facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence.' "

■ In summary, the State relies upon the following facts to meet its burden under the above rule. (1) A person with the same physical description as Thoe was seen running away from the city hall within a few minutes after the explosion. (2) A car similar to one owned by Russell Jones was seen leaving the vicinity where the boy was running. (3) A knife which may be assumed to have belonged to Thoe was found near the City Hall. (4) Thoe's hands gave evidence that he had handled commercial dynamite about the time the explosion occurred.

Although the boy seen running near 71st and Blair Road was observed by three people, none of them were able to identify Thoe as that person. There was nothing

unusual about the description given of the person. This includes the shoulder length hair which Thoe was described as possessing, since many young men wear their hair that length. There was no unusual feature about Thoe's appearance which would distinguish him through observation. In short, there was no evidence from which a reasonable inference could be drawn that the person seen running was in fact Thoe. Such inference could be drawn only by the same physical description. Without some identification of Thoe as being the person the witnesses saw running, and absent any other evidence which would connect Thoe with that person, the jury would be required to speculate that the person observed by the witnesses was Thoe. To identify Thoe as the person seen by the witnesses based only on a similarity of the general physical description does not exclude a reasonable hypothesis of innocence because any number of persons in addition to Thoe could fit the general physical description of the person running near the scene. In short, this evidence was insufficient to provide a base for the jury to find the person running was Thoe. *Bull v. Commonwealth*, 208 Va. 447, 158 S.E.2d 669, 672[4] (1968).

The State appears to rely more on the discovery of the knife than on the description of the boy as given by the witnesses. However, the presence of the knife also requires speculation to connect Thoe with the crime. There was no evidence the knife was in the exclusive possession of Thoe prior to the explosion. In fact the only evidence concerning this aspect showed Thoe kept the knife in his car and the car was used by his brother. Of greater significance is the fact the evidence totally fails to show any connection between the knife and the crime. The knife was found alongside a road some distance from the city hall. There is no evidence to indicate the knife was actually used in the commission of this crime. There were no tests to determine if the knife had been in contact with commercial dynamite nor were any fingerprints found on it. The location of the knife is not inconsistent with a number of reasonable theories of innocence on the part of Thoe.

There is no evidence to exclude the reasonable theory the knife was left where found at some time other than the night of the explosion. Absent some evidence by which the knife could be connected with the crime, the presence of the knife at the point discovered would not exclude a number of reasonable theories of innocence on the part of Thoe.

The State in its argument in this court stated the only evidence it had to connect Thoe with the commission of the crime was the description of the boy seen running and the discovery of the knife. Neither of these facts exclude any number of reasonable theories of innocence and, therefore, do not constitute sufficient evidence under the circumstantial evidence rule to support the conviction. However, the jury had the additional evidence of the presence of a car similar to Russell Jones' being seen in the vicinity of the boy running. There was no evidence from which the jury could find Thoe was in the car or that he was with Jones at that time. The only evidence on this question showed that Jones and Thoe were not together after they left Robin's house.

Further the indication that Thoe had handled commercial dynamite, standing alone, would not exclude any number of reasonable theories of innocence. Without evidence to connect Thoe with the commission of the crime, handling of dynamite could have occurred as easily in an innocent fashion as it could have in connection with the commission of the crime charged. This evidence, standing alone, would not meet the requirements of the circumstantial evidence rule.

Likewise, the items found in Thoe's room show no connection with the commission of the crime. In fact, the chemical formula for homemade gun powder is at war with the State's evidence which showed the explosion was caused by commercial dynamite. The segment of fuse was not shown to have any connection with the crime and its presence in Thoe's bedroom did not connect him with the crime.

While the circumstances are discussed singly, a consideration of them collectively leads to the same result. The weakness in each link in the State's chain of circumstances is as apparent when considered alone or in concert.

■ The facts shown by the State and the reasonable inferences to be drawn therefrom, viewed as they must be in the light most favorable to the State, throw suspicion on Thoe. However, the law casts a greater burden on the State than to prove a set of suspicious circumstances. It is stated in *Franco* the State's evidence need not be absolutely conclusive of guilt, nor demonstrate the impossibility of innocence. Nor is the existence of other possible hypotheses sufficient to remove the case from the jury. Nevertheless, the requirements of the circumstantial evidence rule remain that the facts and circumstances must be consistent with each other and with the hypothesis of guilt and must be inconsistent with the defendant's innocence and exclude every reasonable hypothesis of innocence. When measured by the circumstantial evidence rule it must be held the State failed to meet its burden to produce sufficient evidence from which the jury would be authorized to convict Thoe. *State v. Keller*, 471 S.W.2d 196 (Mo.1971).

■ There is nothing in the record to indicate the State has any additional evidence available. The State has not requested this court to remand the case in the event the evidence was found insufficient. For these reasons, the judgment is reversed and Steven Thoe is ordered discharged.

All concur.