STATE of Missouri, Respondent,

v.

Gerald A. SOBEL, Appellant.

No. 46765.

Missouri Court of Appeals, Eastern District, Division Three.

June 5, 1984.

Leonard J. Frankel, Clayton, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Gerald A. Sobel, defendant herein, appeals from his conviction, after a jury trial, of arson in the second degree. § 569.050, RSMo (1978). He was sentenced to three months in jail and fined $5,000. Execution of the sentence was suspended and he was placed on probation for three years. His sole point on appeal is that the evidence was insufficient to support the conviction. We affirm.

■ The elements of arson in the second degree are (1) that a building was on fire; (2) that the fire was of incendiary origin; and (3) that the defendant participated in the commission of the crime. *State v. DuBose*, 617 S.W.2d 509, 511 (Mo.App.1981). Defendant concedes that the State proved the first two elements. He contends that the evidence was insufficient to prove the third element.

■ In testing the sufficiency of the evidence, we assess the facts and appropriate inferences arising therefrom in the light most favorable to the verdict, disregarding adverse evidence and inferences. *State v. Doebert*, 659 S.W.2d 280, 281 (Mo.App. 1983).

■ The State's case was based entirely on circumstantial evidence. When a conviction rests on circumstantial evidence, the facts and circumstances relied upon to establish guilt must be consistent with each other and with the hypothesis of defendant's guilt. They must also be inconsistent with and exclude every reasonable hypothesis of defendant's innocence. The circumstances need not be absolutely conclusive of guilt, however, and the mere existence of other possible hypotheses is not enough to remove the case from the jury. *Id.* at 282.

Within this framework, we now review the evidence. The fire in question occurred in the early morning hours of March 27, 1982, at the Creco Pharmacy in the City of St. Louis. Defendant owned the business and had operated it for six years. He did not own the building in which it was located but rented it on a monthly basis, having allowed a lease to expire some four months earlier. The evidence showed that the business was run at a net profit, but that the profit had declined by $2,700 in 1981, despite efforts to reduce expenses. The financial health of the business was disputed, however, with defendant's evidence showing an increase in profits in the first quarter of 1982 and an improved profit margin in 1981. There was evidence, albeit disputed, that the store was sparsely stocked at the time of the fire. Defendant carried $60,000 of insurance on the store and has made a claim on that insurance for $51,500.

On the evening before the fire, March 26, 1982, defendant left the pharmacy at approximately 6:45 p.m. Upon his arrival at home, at about 7:20, his wife informed him that the company which serviced the store's alarm system had called to report trouble with the system. Defendant ate

dinner, then returned to the store. He left his home some time between 8:00 and 8:30. When he reached the store, defendant discovered that all telephone lines into the building had been severed, rendering both the alarm and telephones inoperable.

Between 9:30 and 10:00 defendant telephoned a woman who lived across the street from the pharmacy to ask if he could come up to her apartment. The woman had earlier witnessed a burglary of the store, so defendant knew she could see it from her apartment. Defendant stayed at the apartment until about midnight, and he asked the woman to watch the store during the night. Her testimony as to what occurred after he left is somewhat confused. She consistently stated that she saw defendant's car parked in front of the store at 12:30 a.m. She also testified that she saw defendant's car at 1:30 a.m., but she stated on cross-examination that the car was not there at that time. She said that when she saw the car at 1:30 the lights inside the pharmacy were turned off, which was unusual because the lights were usually left on all night. Defendant testified that he left the store at 12:30.

The fire was reported to the fire department between 3:45 and 3:50 a.m. When the fire department first arrived at the store there were no visible signs of a fire and the building was secure. When the fire was discovered, the firemen gained access to the building by knocking out the plate glass front door because there were no other means of entry. Captain Hohmann of the St. Louis Fire Department testified that he tried to gain access by a rear door, but that door could not be opened.

The floor of the pharmacy had been doused with kerosene. Defendant had brought twenty gallons of kerosene into the store, ostensibly for the purpose of selling a three gallon kerosene heater. None of the police or firemen who responded to the fire had seen a heater at the store, although all recalled seeing cans of kerosene in various places.

The time of the commission of the arson was contested at trial. It was undisputed that the kerosene was used to start and fuel the fire. It was also undisputed that the fire had, in large part, died down by the time the fire engines arrived. The explanation for this was the lack of oxygen available in the store to feed the fire. The State's expert testified that it had been burning at least one and a half hours, and possibly up to three and a half hours. Defendant's expert stated that the fire had burned no longer than twenty minutes.

The condition of the rear door was also disputed. As previously noted, Captain Hohmann stated that the door was secure when he arrived. The State's expert testified that there was no indication of forcible entry through the door. Defendant produced an expert who disagreed and explained how entry could have been gained through that door. The evidence showed that, in addition to the doorknob assembly, there was a separate dead bolt lock on the door. This lock had been pried from the door. The State's expert testified that this had been done from the inside of the door, while defendant's expert stated that it could have been forced from the door by pressure from the other side. It was clear that a forcible exit from the store was unnecessary, because no key was needed to leave by that door. The significance of the condition of the bolt, therefore, is whether there had been a forcible entry into the store. The State's theory is that the lock was pried from the inside in order to create a false appearance of forcible entry or exit. Defendant, on the other hand, attempted to show that someone had forced his or her way into the store, thus placing another potential arsonist at the scene.

■ We conclude that the State made a submissible case. Defendant's business had become less profitable. Defendant was placed at the scene as late as 1:30 a.m. and even admitted being there until 12:30 a.m. According to the State's expert the fire could have been started at either of these times. Thus the evidence established that defendant was present and left within

the time for the fire to have been deliberately set. *State v. Easley,* 662 S.W.2d 248, 250 (Mo. banc 1983). In addition, the State's evidence excluded the presence of anyone else on the premises. Considering all these factors, the State met the required proof by circumstantial evidence of arson by the defendant.

The judgment of the trial court is affirmed.

KAROHL, P.J., and REINHARD, J., concur.