**STATE of Missouri, Respondent,**

v.

**John G. PICONE, Appellant.**

**No. WD 39998.**

Missouri Court of Appeals, Western District.

Sept. 13, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1988.

Robert Beaird, Howard C. Hoyt, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before COVINGTON, P.J., and NUGENT and GAITAN, JJ.

PER CURIAM:

A jury convicted defendant John G. Picone of knowingly burning an automobile owned by another in violation of § 569.055, Revised Statutes of Missouri, 1986. The court sentenced him to ten years imprisonment as a persistent offender. He now claims that the trial court erred in overruling his motion for a judgment of acquittal because the evidence was insufficient to support his conviction. We affirm the judgment.

This case arises out of the burning of a 1985 Cadillac Fleetwood automobile. In October of 1986, defendant Picone submitted a claim to his insurer, the Farmer's Insurance Company, alleging that his automobile had been stolen. In October, 1986, the insurance company paid him $1,413.17 on his claim for his equity in the automobile and paid $15,441.83 to the Ford Motor Credit Corporation for the loan on the vehicle. In exchange, the title to defendant's Cadillac was transferred to the insurance company, which then applied for and received a salvage title to the automobile.

On December 15, 1986, the automobile in question was found burning near the Missouri River. Between 6:00 and 6:30 that evening, Corporal Floyd Castle, a reserve officer for the Sugar Creek police department, was driving home from work heading north on Highway 291. As he approached the bridge over the Missouri River, he saw a flash and a fire burning in LaBenite Park near the south end of the bridge. When he came closer to the park, he saw a red pickup truck coming out of the park area and toward the highway. At that point, he had "a pretty good view of the park," and he could see no other vehicles in the area.

Cpl. Castle slowed down and when the truck was about twenty feet away as it passed him he could see two white males in the truck's cab. The driver had long brown hair and wore a cap, and the passenger had curly black hair.

He turned his car around to follow the truck. Accelerating, he brought his car close behind the truck and made a note of its license plate number. He saw the passenger turn around and look at him at least three times and "got a real good look at him." He saw the passenger's face distinctly, both in profile and in a full-face view so that he had "no doubt ... whatsoever" that the passenger in the truck was defendant Picone.

After following the pickup truck for two and a half to three minutes, Cpl. Castle

turned back and drove to a nearby residence, called the police and then returned to the scene of the fire. When the police arrived, he told them about the pickup truck, gave them the truck's license plate number, and described the occupants of the truck. The police were able to get the burned-out automobile's vehicle identification number, which matched the number of the automobile that defendant had reported stolen.

The next day, Cpl. Castle picked out the defendant's picture from a spread of five photographs. He looked at each photograph at least twice before making his selection and testified that he was "one hundred percent" certain that the person in the photograph was the person he had seen the day before. Mr. Picone could not be located for a live lineup.

As part of its investigation, the Sugar Creek police department had an expert investigate the fire. His report declared that the fire "was started by person or persons unknown pouring some type of flammable liquid accelerant on the front floorboard and front seats."

Defendant Picone did not testify at trial. The only witness called by the defense was the meteorologist who testified that on December 15, 1986, the sun set at 4:57 p.m.

On appeal, defendant claims that the trial court erred in overruling his motion for a judgment of acquittal because the evidence was insufficient to submit the case to a jury. We disagree with his contention and affirm the conviction.

In considering the issue of the sufficiency of the evidence, we consider the facts and all favorable inferences to be drawn from them in the light most favorable to the state, and we reject all contrary evidence and inferences. *State v. Clark*, 652 S.W.2d 123, 124 (Mo.1983) (en banc). The guilt of a defendant in an arson case may be established by circumstantial evidence. *State v. Walters*, 735 S.W.2d 737, 740 (Mo.App.1987). In such a case, the facts and circumstances on which the state relies must be consistent with each other, consistent with guilt, and inconsistent with every rational hypothesis of innocence.

*State v. Ailshire*, 664 S.W.2d 630, 632 (Mo. App.1984). The facts and circumstances, however, need not demonstrate the impossibility of innocence. *State v. Harris*, 639 S.W.2d 122, 126 (Mo.App.1982).

Defendant Picone claims that the state did not meet that evidentiary burden. To support his contention, he cites two cases he considers to be substantially similar to his own. The first is *State v. Thoe*, 565 S.W.2d 818 (Mo.App.1978), in which we reversed a defendant's conviction for the bombing of the Weatherby Lake City Hall. However, *Thoe* is easily distinguished from the instant case: none of the witnesses in *Thoe* could positively identify the defendant as the person seen running away from the scene of the explosion. Here we have the eyewitness testimony of a veteran reserve police officer who positively identified the defendant as the passenger in a truck leaving the site of the burning automobile.

The other case defendant cites, *State v. Siraguso*, 610 S.W.2d 338 (Mo.App.1980), is also distinguishable. In *Siraguso*, the defendant was seen leaving a house moments after a fire broke out in the basement. The owner, a distant relative of the defendant, left the house in response to years of threats and harassment from unknown assailants who apparently were intent on forcing her to leave the neighborhood. She had entrusted the keys to the house to defendant Siraguso.

In that case, the mechanics of combustion suggested that the fire was set before the defendant arrived on the premises. The court held that, given the long history of harassment and threats endured by the occupant, other parties apparently had the opportunity and the purpose to destroy the house. Those factual circumstances, said the court, were consistent with the defendant's innocence and thus did not exclude every reasonable hypothesis of innocence.

In the case at bar, on the other hand, the record is devoid of any facts or circumstances consistent with the defendant's innocence. Unlike *Siraguso*, the facts of our case contain no suggestion of any other

parties with the motive or opportunity to destroy the defendant's automobile. On the contrary, the facts in this case are closer to the facts in *State v. DuBose*, 617 S.W.2d 509 (Mo.App.1981), which affirmed the conviction of the defendant for arson of insured property. In *DuBose*, a police officer noticed smoke coming from a building and, while approaching the building to investigate, observed a green and white pickup truck coming up the alley on the side of the building. His headlights and the street lights enabled the officer to look at the truck's driver for approximately thirty seconds. The officer stated that he was "pretty sure but not positive" that the defendant was the driver. At the time of the fire, the defendant was the owner of a green and white pickup truck.

In *DuBose*, the evidence also disclosed that the defendant doubled insurance on the building about two months before the fire and that he had substantial debts at the time of the fire. The evidence also established that he had the only key to the building, which bore no sign of forced entry. The court held that this evidence was sufficient to establish the defendant's guilt because from it the jury could reasonably have found that he committed the act of setting fire to the building.

 Similarly, in the case at bar, we have evidence of a motive that involves insurance payments and testimony of an officer who observed the defendant driving away from the scene of the fire. Furthermore, we have evidence that the defendant and the driver of the pickup truck were the only people present at the scene of the fire. Those facts do not suggest any reasonable hypothesis of the defendant's innocence.

Another similar case is *State v. Sobel*, 672 S.W.2d 377 (Mo.App.1984). There the defendant was the owner of a pharmacy in which a fire had been deliberately set. He later made an insurance claim for $51,500. In affirming his conviction, the court held that evidence placing the defendant at the scene of the fire at a time when the fire could have been started and a lack of evidence placing anyone else at the scene was sufficient to support his conviction for ar-

son. 672 S.W.2d at 379–80. Here also we have evidence placing the defendant at the scene of a deliberately-set fire at a time when the fire could have been started and a lack of evidence placing anyone else at the scene.

In *State v. Nelson*, 674 S.W.2d 220, 224 (Mo.App.1984), the court held that, where a fire has been deliberately set, evidence that the defendant had the means, opportunity and motive for setting the fire may sustain a finding of the defendant's criminal agency. Such is the case here.

Accordingly, we affirm the judgment of the trial court.