THE STATE v. JOSEPH SINOVICH, Appellant.—46 S. W. (2d) 877.

Division Two, February 17, 1932.

910

*Bass & Bass* for appellant.

*Stratton Shartel*, Attorney-General, and *Don Purteet*, Assistant Attorney-General, for respondent.

WESTHUES, C.—The appellant, Joseph Sinovich, John Pepe and Claude Gillman were jointly indicted, by the grand jury of St. Louis County, Missouri, at the January term, 1930, with having kidnapped and secretly confined one Jacob Hoffman. Joseph Sinovich, appellant, was granted a severance. On a trial, before a jury, he was found guilty as charged and his punishment fixed at two years imprisonment in the penitentiary. A motion for new trial was filed, overruled by the court and defendant sentenced in accordance with

the verdict of the jury. From this judgment defendant has perfected his appeal to this court.

Defendant did not offer any evidence in the case. The testimony adduced by the State reveals the following state of facts: Jacob Hoffman, the person kidnapped, was a merchant engaged in the cigar business at 112 North Broadway, in the city of St. Louis, Missouri. On the evening of February 18, 1930, at about seven o'clock, while answering a telephone call in his office, on the second floor of the building, three men entered, and after robbing him of his money, blindfolded Hoffman, placed him in a car and drove away. Hoffman stated that each of the three men had an automatic pistol; that they had their hats on and handkerchiefs or rags tied over the lower part of their faces. Hoffman testified that to his best judgment the men drove south for about one-half hour, then he was taken into a building and kept there all night and until the following evening. It seemed to the witness that four men stayed with him the greater part of that night. The following evening Hoffman was taken in an automobile, and, after being taken for a drive lasting about a half hour, was placed in another building, where he remained all of that night and the next day. That night he was again moved. This time the ride lasted an hour, and Hoffman was taken to the home of defendant, Sinovich, where he remained all night and up to ten or eleven o'clock the next morning, when the police discovered them. Hoffman was released and Gillman and Pepe were taken in custody by the police. During all of this time Hoffman was blindfolded and did not see anyone, neither did he know where he had been taken. Hoffman testified that defendant, Sinovich, in his best judgment, was not one of the three men who entered his place of business on Broadway. The defendant's home is located on Bayless road in St. Louis County, south of the city of St. Louis. It consists of a large brick house with several acres of ground belonging to and surrounding it. It has a number of outbuildings, a dance hall and a baseball ground near it. It is situated about one hundred fifty feet from the main road, with a lot of shrubbery and a driveway leading to the house. It seemed to witness, Hoffman, that when the men arrived at the last mentioned place he was first taken to one of the out buildings, then to the basement of the main building. The basement, where Hoffman was found, is divided by a partition wall with an opening in it about the size of an ordinary door. Hoffman was placed in one of these compartments. To darken the basement heavy paper had been placed over the window. There was an entrance from the outside to the basement, and also a stairway and entrance connecting the rooms upstairs with the basement. Hoffman heard frequent whispering going on in the basement during the night. He also heard a radio and people moving about and talking upstairs. The next

morning he was served hot coffee, ham and eggs. When the officers arrived, they found Pepe, Gillman and Hoffman in the basement. The Sheriff of St. Louis County gained entrance to the basement by kicking open the door. The officers found a number of barrels and boxes in the basement. On top of one of the barrels they found three, forty-five automatic revolvers fully loaded. The officers also found three overcoats on one of the barrels, two of which belonged to defendant Sinovich, and a third which was not identified. Dishes were found, which gave evidence that eggs had recently been served on them. The officers made a search of the Sinovich home and found Mrs. Sinovich and a seventeen-year-old son, but did not find the defendant. Hoffman also testified that he was forcibly taken from his place of business and kept in hiding against his will. A number of police officers testified that defendant, after his arrest, made substantially the following statements: that Pepe and Gillman drove into his yard on the evening of February 20th, while he, Sinovich, was playing cards in his clubhouse with a man named Pinkerton; that he went out to meet the men, whom he recognized as Pepe and Gillman, and they asked permission to remain in one of his outbuildings for the night, because they were being pursued by a prohibition agent named Dillon, and wished to hide and avoid arrest; that he saw no more of the men until the next morning, when one of them knocked on the door leading from the basement upstairs, and asked for something to eat; that he, Sinovich, personally prepared some coffee, ham and eggs and gave it to them; that the men gave as a reason for moving to the basement from the clubhouse, they were afraid Dillon would find them in the clubhouse. Sinovich also admitted to the officers that two of the overcoats found were his property. Additional facts will be stated in the course of the opinion if it is deemed necessary.

The alleged errors, complained of by defendant in the motion for a new trial, may be briefly summarized as follows: (1) That the verdict of the jury is the result of passion and prejudice. (2) That there is no substantial evidence to support the verdict. (3) That instructions numbers 1, 2, 3, 5, 6, 7, 8 and 9 are erroneous. (4) That the trial court erred in admitting certain evidence. (5) That the trial court should have declared a mistrial for alleged improper remarks of the prosecuting attorney during his closing argument to the jury. (6) That the indictment is insufficient. These in the order named.

We have searched the record and have failed to find any fact to support the assignment of error; that the verdict of the jury is the result of passion and prejudice. An assignment of error must be founded on some fact appearing in the proceedings. Otherwise, not

having any foundation, it falls and crumbles of its own weight. The point is ruled against appellant.

Defendant challenges the sufficiency of the evidence to support the verdict. In determining this question we must keep in mind: (1) That the crime of kidnapping is necessarily, by the very nature of the offense, one that is usually committed by more than one person. Therefore, it is as a rule the fruit of a conspiracy between two or more persons, wherein, the time of the offense, the person to be taken, the place of hiding and the details of the movements of the conspirators are prearranged and agreed upon. (2) That all persons, entering into such a conspiracy, and who aid, or abet, or intentionally play any part in the furtherance of the commission of the offense, are equally guilty of the crime so committed. (3) This being a case of circumstantial evidence the defendant cannot be convicted unless the facts and circumstances proven are consistent with each other and tend to prove the guilt of defendant, and they must be inconsistent with any reasonable theory of defendant's innocence. [16 C. J. 1011.] Does the evidence in this case measure up to these requirements? We think it does. We will attempt to point out the incriminating circumstances which point to the guilt of the defendant. In the first place, the fact that the defendant permitted Gillman and Pepe to seek shelter and secrete themselves in and about defendant's home to avoid arrest, is evidence to a reasonable mind that the defendant Sinovich, and Gillman and Pepe were closely associated and on intimate terms with each other. It is not reasonable to believe that a person would harbor a casual acquaintance, under such circumstances, in and about his home. The evidence clearly reveals that the defendant willingly and gladly permitted these parties to remain in his basement, knowing at the time, according to defendant's statement, that they were fugitives from justice. Defendant aided them, by providing food and shelter. The fact that Gillman and Pepe so occupied the basement with their victim is a strong circumstance against defendant and tends to connect him with the crime. Two of defendant's overcoats were found, with a third, carelessly thrown over some barrels in the basement. This occurred in February, and this court will take judicial notice of the fact that overcoats are in general use in this State at that season of the year. Is it not reasonable to assume that these overcoats, being together in the basement, under the circumstances, had all been used on the various rides mentioned in the evidence? In a statement to the police officers defendant said that when the machine drove into the yard he, defendant, went out and met two men in the machine, whom he recognized as Pepe and Gillman, and gave them permission to use the clubhouse for a hiding place. Hoffman, at this time, was blindfolded and was with Pepe and Gillman. They entered the clubhouse and from there Hoffman was led to the

basement still blindfolded. Defendant at this time, according to a statement to the police, was playing cards with one Pinkerton in one of the clubhouses. From that position we assume the grounds surrounding the home could be observed, for defendant saw the machine drive onto his place. Did defendant see Hoffman in the car? Did he see him being led about blindfolded? This certainly was an unusual occurrence and likely to attract attention, yet, as to this the record is as silent as a tomb. Where is Pinkerton, if he was really there playing cards with defendant, to testify and support defendant in his version of what occurred? Where are the members of the family, who were there during that night and the next morning, to testify that defendant did not go to the basement during any of this time and that Hoffman, Pepe and Gillman were not heard in the basement? This court and the trial jury have the right to take into consideration that no evidence was offered to refute or explain the incriminating facts or circumstances, when it is apparent that witnesses, who were evidently friendly to the defendant, were available for that purpose. [State v. Janes, 1 S. W. (2d) l. c. 139.] Is it reasonable to believe that Gillman and Pepe with Hoffman could occupy the basement all that night, darken the basement by placing heavy paper over the window, barricade the basement door, have a bed prepared for Hoffman, as was done, and yet, of all of this the defendant, as he stated to the police, saw, heard and knew nothing. The only theory advanced, by defendant, explaining his innocence, is that he did not know the real purpose of Gillman and Pepe in coming to his place to hide; that he did not know that Hoffman was with them. Taking a common sense view of this situation and drawing from the evidence conclusions, according to the common experience of mankind, is there any reasonable theory upon which defendant may be innocent? We think not. The facts proven are consistent with each other. They all point to defendant's guilt and are inconsistent with any reasonable hypothesis, except the guilt of defendant. This court certainly ought not to say that a jury, under these circumstances, should take a theory so unreasonable and so inconsistent with common experience, as advanced by defendant, and acquit him. It is much more reasonable to believe from the evidence that defendant had arranged before hand that his place might be used to secrete Hoffman. Gillman and Pepe certainly would not drive about the city looking at random for a hiding place when they had reason to believe that the entire police force was on a lookout for the captors of Hoffman. We hold that the case was properly submitted to the jury and the evidence is sufficient to support their verdict.

Defendant's assignment of errors in the motion for new trial, numbered seven to fourteen inclusive, pertained to instructions numbered 1, 2, 3, 5, 6, 7, 8 and 9. The objections to each and every in-

struction in the several assignments are identical. It may be termed a shotgun assignment. Very general in its nature, it fails to point out any particular defect. It reads as follows: ". . . that said instruction is bad in form and substance, misstates the law and misdirects the jury as to material matters of law necessary for their information; that said instruction comments upon the evidence and is argumentative; and further, is not based upon facts in evidence, and further said instruction is inconsistent with each and every other instruction given by the court." We have examined the instructions carefully and find that they are consistent with each other and fairly submit the questions at issue to the jury. The instructions given are authorized by the evidence. Defendant does not point out wherein the instructions are comments upon the evidence, nor wherein they are argumentative. Upon an examination we do not find any of them subject to these criticisms. The other objections are so indefinite and vague that they do not present any question for our review, as this court has uniformly held for many years. [State v. Burrell, 298 Mo. 672, 252 S. W. l. c. 711; State v. McBrien, 178 S. W. l. c. 491.]

Defendant contends that the trial court erred in admitting certain evidence offered by the State. Witness, Hoffman, testified that when the three men kidnapped him they also robbed him and his associates of their money. The defendant contends this was error as proving an independent crime. We must rule this point against defendant for two reasons: First. When the evidence was first offered no objection whatever was made to its reception, nor was there a motion made to strike it out. Defendant, therefore, waived any objection he might have had. Objections to evidence and motions to strike out improper evidence must be timely made. [State v. Matkins, 327 Mo. 1072, 34 S. W. (2d) l. c. 5 (8); State v. Cain, 37 S. W. (2d) l. c. 418, 16 C. J. 874 (2195).] Second. The kidnapping and robbery occurred in the same transaction. When a defendant in the course of the perpetration of one crime commits another the State is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which he is not on trial, when it forms a part of the *res gestae* of the crime charged. [State v. Higgs, 325 Mo. 704, 29 S. W. (2d) l. c. 75 (4, 5), 16 C. J. 574, 1115.]

Next defendant urges that the trial court should have granted a new trial because of the evidence of the Sheriff of St. Louis County, and his deputy, with reference to finding a still in defendant's home. This evidence was improper, as tending to prove an entirely separate and different offense, and not tending to prove or disprove any issue in the case on trial. [16 C. J. 574.] However, the answer containing this evidence was, in both instances, not responsive to the

questions asked. At its first intimation an objection was made by defendant's counsel and the objection promptly sustained by the court and the jury admonished to entirely disregard it. We think the defendant was not prejudiced thereby, and the court did not err in not discharging the jury and declaring a mistrial. The discharging of a jury and declaring a mistrial, during the progress of a trial, rests largely within the discretion of the trial court. [State v. Bersch, 207 S. W. l. c. 817 (25); 16 R. C. L. 321.]

Defendant also urges that the trial court erred in permitting the police officers to testify to alleged conversation and statements made by the defendant to the police officers without first proving the *corpus delicti* and connecting the defendant therewith. We do not know what defendant understands by the term "proof of the *corpus delicti.*" In law it simply means the proof of the fact that a crime has been committed, and nothing more. [16 C. J. 771.] Proof of defendant's connection with the crime charged is not necessarily, and ordinarily is not, a part of the *corpus delicti.* [State v. Joy, 285 S. W. l. c. 494.] The fact that a crime had been committed was proven in this case beyond the peradventure of a doubt, independent of any statements made by the defendant. As to defendant's connection therewith, that was the very purpose of the evidence. Any statements made by a defendant, which tend to incriminate him and connect him with the crime charged, are admissible when voluntarily made. We find no error committed by the trial court in the admission of the testimony as contended for by defendant in his motion for a new trial.

The assignment, that the court erred in not declaring a mistrial at defendant's request, for alleged improper remarks of the prosecuting attorney, is without merit. It is evident from that part of the argument, preserved in the bill of exceptions, that the prosecuting attorney, when he made the statement to the jury: "You have sworn and told me this morning that if you believed this man guilty beyond a reasonable doubt, which to me, this gentleman, clearly reveals, and no dispute about it," was not expressing his private opinion of defendant's guilt, but was stating his conclusion based on the evidence. The court, on motion of defendant admonished the jury to the guided by the law and the evidence and to disregarded the statement of counsel as to what his opinion may be. The ruling of the court, if error, was error against the State. A prosecuting attorney should not express his private opinion of the guilt of the defendant. [State v. Smith, 281 S. W. l. c. 40.] But he has a right, in his argument to the jury, to draw legitimate conclusions based on the evidence. [State v. Conrad, 14 S. W. (2d) l. c. 611 (7, 8); State v. Rogers, 161 S. W. l. c. 774 (4); State v. Hart, 237 S. W. l. c. 480 (17, 18), 16 C. J. 908, and cases cited under note 44.] But

918

granting, for the sake of argument, that the prosecuting attorney violated this rule in making the above statement, the court sufficiently admonished the jury to disregard the statement of counsel and thereby counteracted any prejudice that might have resulted. The court rightly refused to discharge the jury, as requested. [State v. Hart, supra, l. c. 480 (14, 16).]

Appellant has not briefed or cited any cases to support the contention, made in the motion for a new trial, that the indictment is insufficient. We have examined the indictment which charges the offense substantially in the language of the statute. [Sec. 4021, R. S. 1929.] We find it sufficient both in form and substance. We have also examined the record proper and find no reversible error therein.

The defendant, in our opinion, has had the benefit of a fair and impartial trial. The rulings of the trial court on the objections of defendant to the evidence offered by the State and the instructions given, are if anything more favorable to the defendant than the law requires. ·

The judgment of the trial court will be affirmed. *Cooley* and *Fitzsimmons, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.