**STATE of Missouri, Respondent,**

v.

**Elvin Wayne ADAMS, Appellant.**

**No. 50379.**

Supreme Court of Missouri,
Division No. 2.

April 12, 1971.

John C. Danforth, Atty. Gen., Frank P. Cihlar, Asst. Atty. Gen., Jefferson City, for respondent.

Shifrin, Treiman, Schermer & Gallop, Gary S. Heifetz, St. Louis, for appellant.

FINCH, Judge.

Defendant was tried and convicted under the Second Offender Act (§ 556.280, V.A.M.S.) on March 29, 1963, on a charge of rape and was sentenced to life imprisonment. On appeal that conviction was affirmed on June 8, 1964, in State v. Adams, Mo., 380 S.W.2d 362. Defendant then filed a motion to vacate judgment and sentence under Supreme Court Rule 27.26, V.A.M.R. Denial of relief thereon by the trial court was affirmed in State v. Adams, Mo., 403 S.W.2d 604. Thereafter, on the basis of Swenson v. Donnell, 8 Cir., 382 F.2d 248, and Bosler v. Swenson, 8 Cir., 363 F.2d 154, this court, at defendant's request, set aside the June 8, 1964, affirmance and reinstated his appeal for the reason that he had not been represented on appeal by counsel. Counsel was appointed and the case has been briefed and argued. We affirm.

The evidence at the original trial was extensively stated in the opinion reported at 380 S.W.2d 362. We do not repeat that testimony except as specific reference thereto may be necessary to this decision.

The first point briefed on this appeal is that defendant's oral and written confes-

sions were coerced and not voluntary and consequently were erroneously admitted in evidence. In reviewing that question it appeared from the transcript of the original trial that on defendant's request the court conducted a hearing outside the presence of the jury on the admissibility of the confessions, at the conclusion of which they were ruled admissible. However, the court did not make a specific finding of record that the confessions were voluntary, as a result of which we made an order pursuant to the procedure adopted in State v. Auger, Mo., 434 S.W.2d 1, and State v. Edwards, Mo., 435 S.W.2d 1, as follows:

"It appearing from our consideration of this case that the trial court admitted into evidence the oral and written confessions of defendant as testified to and identified by witnesses for the State; that prior thereto the court held a hearing outside the presence of the jury to determine the competency of said confessions; and that following said hearing the trial court overruled objections to said confessions and admitted same into evidence, but that the transcript of the record does not show with unmistakable clarity that the trial court found the confessions to be voluntary, as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593;

"It is ordered, therefore, that the trial court, after giving counsel notice and with defendant present, shall conduct a hearing and from a consideration of the evidence in the record in this case and such additional evidence, if any, as may be offered by the State or by the defendant on the subject (Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634), the trial court shall make an express finding as to whether said confessions were or were not voluntary.

"It further is ordered that the aforesaid findings shall be certified promptly to this court, to be considered as a supplement to the transcript, in order that this court thereafter may proceed to make a determination of all the issues in this case."

■ The trial court on December 18, 1970, held a hearing pursuant to the above order, and we now have received a duly certified supplemental transcript of that testimony and of the court's findings of fact and conclusions of law. The trial court, based upon the transcript of the original trial and the testimony heard on December 18, 1970, specifically found that the defendant was advised of his rights prior to his oral and written statements and that his confessions were voluntary.

Defendant was arrested during the morning of February 23, 1963, at the motel where he was employed as a bellhop. He was taken then to the Kirkwood Police Department where the police were holding Frank Spears, another suspect (as the original opinion at 380 S.W.2d 362 indicates, two men were involved in the incident and Frank Spears was the other person). Defendant was told at that time that he had the right to remain silent and make no statement and that anything he said could be used against him.

Defendant was kept at Kirkwood a half hour or so and was interrogated about the incident at the Twin Oaks Motel during which Mrs. Hartupee was raped. He denied any knowledge of the incident. He then was taken by the officers sometime before noon to the St. Louis County Police Department Headquarters at Clayton, where he was booked on the charge of rape and placed in a cell.

That evening the two officers, together with Sgt. St. Onge, arranged a lineup at the Sheriff's office at Clayton which involved six persons, including defendant and Jack Spears. Defendant was identified at the lineup by the victim, after which he was returned to the St. Louis County Police Headquarters. He then was questioned in the presence of the victim, her husband and Mrs. Buchanan, a friend

who had been present in the motel room when the incident occurred. Defendant again was advised of his rights but nevertheless agreed to make a statement in which he admitted that he and Frank Spears had been at the Hartupee motel room and that he had raped Mrs. Hartupee at that time.

Defendant then was taken by the officers to the home of a relative where he said he had left the gun used in the incident, together with some articles, including a radio, taken from the Hartupee motel room. After picking up the gun and radio they went to the Hartupee motel room where defendant pointed out where everyone had been and described the occurrences, and pictures were taken. Thereupon, they returned to Clayton, where defendant gave and signed the written confession which was introduced into evidence. According to the officers, Detective Herren would type a question and read it to the defendant, after which he would type defendant's answer. This procedure was followed until the statement was completed, after which defendant read and signed the statement and initialed the corrections made therein.

Defendant testified that at no time was he advised of his constitutional rights, including the right to remain silent. He said that he was interrogated almost constantly except for short periods in the cell at Clayton, and that during the afternoon of February 23, Detective Patty took him to a soundproof room on two separate occasions and beat him and threatened him with death if he did not confess. He also testified that as he was returned in the automobile from the lineup to the Police Headquarters he was taken into an alley and the officers tried to push him out of the car and threatened to shoot him unless he agreed to confess.

This testimony of defendant was contradicted by the officers. They testified, as previously stated, that defendant was advised of his rights and that defendant was

not at any time beaten or threatened or abused. The alleged beatings by Detective Patty during the afternoon and by Patty and St. Onge enroute between the lineup and Police Headquarters were specifically denied by the officers.

In addition to the testimony by the officers on the question of mistreatment, the State produced Jacob Wolff, a reporter for the Post-Dispatch, who testified, as noted in the original opinion, 380 S.W.2d l.c. 369, that at about noon on February 23, he saw defendant in his cell in the jail beating his head against the wall and bars of the cell. This, according to Mr. Wolff, produced bruises and caused defendant to bleed about the mouth. This occurred before the times during the afternoon when, according to the defendant, he had been beaten by Detective Patty. Defendant conceded that he had been mad and had hit his head against the wall but insisted that he had not hit hard enough to produce bruises around the head or mouth.

In further support of his claim that his confessions were involuntary and coerced, defendant also testifed on December 18, 1970, that he had asked on the morning of February 23 to talk to his employer, Marty Brodsky, but that the officers said they would call him instead. Defendant had not mentioned this at the time he testified in the hearing about the confessions at the original trial. The police officers testified that they recalled no such request, and one officer stated he was sure the request would have been granted if made. In addition, one of the officers gave testimony indicating that defendant's employer had called and talked to the Superintendent of the County Police Department.

It is apparent that there was a sharp conflict in defendant's version of what occurred while he was in custody and the testimony offered by the State from Officers Patty, Herren and St. Onge and from Jacob Wolff. Necessarily, the trial court had to decide this question of credibility. Based on the evidence heard December 18, 1970, and the transcript of the earlier trial,

it resolved the issue adversely to defendant and found with unmistakable clarity that defendant's confessions were voluntary. There is abundant evidence to sustain and justify such a finding. Accordingly, this case is not governed by decisions relied on by defendant which hold that coerced confessions are inadmissible. We hold that admission of defendant's confessions into evidence was not error.

■ Defendant's second contention on this appeal is that prejudicial error resulted from admission in evidence of exhibits which related to crimes of robbery and assault when defendant was being prosecuted only on a charge of rape. Specifically, this objection applies to parts of defendant's written confessions which referred to the rape, robbery and assault at the Hartupee motel room and told of a gun being exhibited and a clock radio and some rings being taken. The objection also goes to the admission in evidence of the clock radio and a wallet found at the scene from which money supposedly was taken. Defendant claims that the evidence in question in no way helped the State to prove any of the necessary elements of the charge of rape as those elements are detailed in State v. Deckard, Mo., 426 S.W.2d 88, and that as stated in State v. Johnson, Mo., 347 S.W.2d 220, 222, "It is well established as a general rule that evidence of crimes other than that for which a defendant is on trial is not admissible."

There are numerous decisions of this court which clearly establish that the evidence objected to was admissible. For example, in State v. Moore, Mo., 353 S.W.2d 712, defendant accosted prosecutrix, dragged her into a nearby yard and raped her. He then reached into her coat pocket and took her wallet. The court held that evidence of the robbery was admissible as part of the res gestae. In State v. White, Mo., 301 S.W.2d 827, defendant was tried and convicted on a charge of robbery. At the trial testimony was introduced concerning his assault with intent to rape immediately following the robbery. The evidence

was held to be inseparable from that of the robbery and hence admissible as part of the res gestae. In State v. Gentry, Mo., 212 S.W.2d 63, defendant took a bag, wallet, watch and ring from prosecutrix, after which he forced her into a shed and committed an act of sodomy. Defendant was tried and convicted on a charge of robbery by means of a deadly weapon. It was held that the evidence of the sodomy was inseparable from that concerning the robbery and was admissible. The court quoted from State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, l.c. 880, as follows: "When a defendant in the course of the perpetration of one crime commits another, the state is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which he is not on trial, when it forms a part of the res gestae of the crime charged." Even in the case of State v. Johnson, supra, relied on by defendant, the court held that evidence showing the total acts of the defendant and his companions, offered to show their participation in the robbery of Don Knight as charged, was admissible "even though that same evidence tended to prove that defendant was guilty also of other robberies by virtue of his and his companions' same acts." See also State v. Swinburne, Mo., 324 S.W.2d 746; State v. Williams, Mo., 369 S.W.2d 408; State v. Quilling, 363 Mo. 1016, 256 S.W.2d 751. We overrule this contention.

■ Finally, defendant asserts that the court committed reversible error in allowing the State in rebuttal to present the testimony of Jacob Wolff that he saw defendant beating his head and mouth against the side and bars of the cell for three or four minutes, and that he beat his head in such a manner about ten times. Defendant says that Wolff was an essential witness in proving whether or not defendant's confessions were voluntary and his testimony should have been a part of the State's case in chief. Consequently, says defendant, the court should not have allowed Wolff to testify in rebuttal.

We find no merit in this contention. Actually, the testimony was offered by the State to refute the defendant's testimony that the confessions were coerced in that they were beaten out of him. His testimony was proper in rebuttal to the testimony of the defendant himself on this issue.

█ Furthermore, the trial court had the right in its discretion to permit Wolff's testimony in rebuttal, even if it could or perhaps should have been offered by the State in its case in chief. Thus in State v. Feltrop, Mo., 343 S.W.2d 36, 38, this court held that: "It is well settled that the trial court has a broad discretion as to the order of proof and in permitting evidence to be admitted in rebuttal which should have been offered during the case in chief." See also State v. Hall, Mo., 7 S.W.2d 1001; State v. Dees, Mo., 276 S.W.2d 201; State v. Huffer, Mo.App., 424 S.W.2d 776.

Judgment affirmed.

All of the Judges concur.