STATE of Missouri, Respondent,

v.

Carl Edward HARDIN, Appellant.

No. KCD 28928.

Missouri Court of Appeals, Kansas City District.

Oct. 31, 1977.

C. B. Fitzgerald, Warrensburg, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

TURNAGE, Presiding Judge.

Carl Hardin was convicted of second degree murder and sentenced to imprisonment for twenty years by a jury.

On this appeal Hardin contends error in the following: (1) the order to disclose statements taken from third parties by Hardin's attorney and his investigator; (2) admitting statements made by Hardin; (3) failure to require the State to disclose names of rebuttal witnesses; and (4) refusing to permit Hardin to waive the right to have the jury instructed on second degree murder and manslaughter. Affirmed.

On the evening of April 1, 1975, Hardin, together with Leon Taylor, drove around Warrensburg, Missouri, in Taylor's automobile for some time. Taylor's automobile stopped running in front of a laundromat. After Taylor unsuccessfully attempted to restart his car, he obtained a jack handle from the trunk and went to the front door of the laundromat. With Hardin standing beside him, he broke off the lock with the handle and the two entered. Upon entering the building, they immediately saw Jessie Howarter. Mr. Howarter walked into the next room with Hardin and Taylor following. On the way between rooms, Hardin whispered to Taylor they would have to kill Howarter.

Taylor testified he intended to rob Howarter and take his car if he had one. When all three men were in the next room, Taylor asked Howarter if he had any money or a car, and Howarter replied in the negative, although Howarter's billfold was lying on a table in open view. At this point Hardin struck Howarter above the eye with the jack handle and Howarter fell to the floor. Taylor picked up the billfold and Howarter arose and started to grapple with Taylor. Taylor saw a knife and either stabbed or attempted to stab Howarter. Hardin thereupon struck Howarter with the handle and Howarter again fell to the floor. Taylor had dropped the billfold back on the table when he and Howarter first began wrestling.

After Howarter was struck the second time by Hardin, Taylor ran from the building. He hid under his car and said Hardin did not emerge for about five to ten minutes.

The two pushed the car back a short distance from the laundromat door and attempted to hide the jack handle and knife. Howarter's body was later discovered by his roommate and the billfold was found to be on the table.

Medical examination of Howarter's body revealed numerous bruises and contusions on the trunk and arms together with sixteen incision wounds in the body.

Taylor testified he had pleaded guilty to second degree murder and received a sentence of twenty years.

In response to the State's motion for discovery pursuant to Rule 25.34, the court

required Hardin's attorney to give to the State copies of statements which an investigator working for Hardin's attorney had obtained from witnesses. No statement given by Hardin was required to be delivered nor did the statements contain any opinions, theories or conclusions of Hardin's counsel or the investigator.

Hardin first contends the court erred in ordering the disclosure of the statements taken from witnesses because this violated the right of Hardin against self-incrimination, violated the attorney-client relationship and violated the work-product doctrine.

The United States Supreme Court in *U. S. v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) held the discovery of statements taken from witnesses did not violate the defendant's right against self-incrimination. The court held the right against compulsory self-incrimination does not extend to the testimony or statements of third parties but is a personal right. The court held that information which was obtained from witnesses did not come from the defendant himself and, therefore, did not constitute self-incrimination. The court further pointed out the witnesses were available to both the prosecution and the defense and nothing in the statements came from the defendant himself. All of these facts are present in this case. For the reasons stated in *Nobles*, the production of the statements did not violate Hardin's right against self-incrimination.

Hardin further contends the production of these statements violated the attorney-client relationship. The attorney-client privilege is limited to communications between the attorney and his client. Section 491.060[3], RSMo 1969. Of the statements in question, two were notes made by the attorney of what the witness said, and one was of the same tenor made by an investigator. Even though communications are not restricted to oral or written matters, but extend to information communi-

cated by the client to the attorney by other means, nonetheless no communication in any form between Hardin and his attorney was subjected to disclosure. *State v. Dawson*, 90 Mo. 149, 1 S.W. 827 (1886).

Hardin further contends the production of these statements violated the work-product doctrine. Under Rule 25.39, opinions, theories or conclusions of counsel for the State or for the defendant or members of their legal or investigative staff are not subject to disclosure. This is essence is the work-product doctrine which Hardin claims. None of the statements produced contained any of the material which is not subject to discovery. There was nothing in the statements which reflected anything other than the recollections of the witnesses concerning the activities and dress of Taylor and Hardin. There were no notes of any kind reflecting any impression of the witness or opinion or theory of the case. The discovery of these statements did not violate Rule 25.39 or the work-product doctrine.

Hardin next complains the court erred in admitting over his objection statements which he made to police officers. Hardin made one statement which simply said, "I saw Leon Taylor break the lock. I hear someone holler. I was running home past 218 Madison." Another police officer testified to his interview with Hardin and related Hardin told him an expanded version of the above statement. Hardin stated he saw Taylor break the lock on the door to the laundromat and immediately started running. He stated he ran around the block and down an alley on the west side of the laundromat building. He told the officer he looked through a window on the west side and saw Taylor striking Howarter and heard Howarter yell, "Oh my God." Hardin then stated he left the scene. The officer further testified the windows on the west side of the building were completely covered from the inside so that it would have been impossible for Hardin to have seen through the window as he claimed.

Hardin urges the above statements did not constitute admissions nor did they tend to show guilt on the part of Hardin and were, therefore, inadmissible. Contrary to Hardin's contentions, the statements made did tend to incriminate him and connect him with the crime. By these statements Hardin admitted he was present at the door when the lock was broken. The jury was free to disbelieve the balance of Hardin's statement, later reiterated by his testimony, that he fled the scene. The statement here is very similar to the statement admitted in *State v. Sinovich*, 329 Mo. 909, 46 S.W.2d 877 (1931). In that case the court stated at 46 S.W.2d 881 [14, 15]: "Any statements made by a defendant, which tend to incriminate him and connect him with the crime charged, are admissible when voluntarily made." The statements made by Hardin were admissible because they tended to connect him with the crime.

■■■ Hardin next contends the court erred in not requiring the State to disclose prior to trial the names of rebuttal witnesses. Hardin argues he was entitled to these names because the State was required to endorse the names of rebuttal witnesses on the information because this was the second trial. He does not argue the State was required to disclose these names under Rule 25.32. He concedes the rule is stated in *State v. Hooker*, 536 S.W.2d 487 (Mo.App. 1976) that rebuttal witnesses are not required to be endorsed on the information under Rule 24.17. Hardin argues, however, that since he testified at his first trial, which resulted in a hung jury, the State knew his testimony and for that reason knew it would use rebuttal witnesses. The difficulty with Hardin's argument is in the fact the State did not necessarily know Hardin would again testify at his second trial. Hardin, of course, was free to elect not to testify at his second trial and the State would not know of that election until the actual trial. There is no reason to make a distinction as to the endorsement of rebuttal witnesses under Rule 24.17 on the

basis of whether a trial is a first or subsequent one. The court did not err when it held the State was not required to list rebuttal witnesses on the information. No question as to disclosure under Rule 25.32 is presented.

Hardin finally contends the court erred in giving instructions to the jury which submitted murder in the second degree and manslaughter because those submissions were not supported by the evidence. Caveat b. under MAI–CR 6.02 states:

Where both conventional murder and felony-murder instructions are supported by the pleadings and evidence and are given, there must be an automatic submission of all lesser grades (MAI–CR 6.06 and 6.08) of conventional murder as distinguished from felony-murder.

MAI–CR 6.06 is murder, second degree, and MAI–CR 6.08 is manslaughter.

■■■ Hardin was charged with both conventional first degree murder and felony-murder under § 559.010, RSMo 1969. The evidence heretofore set out was sufficient to support a submission of conventional first degree murder. The evidence would support a finding of willfulness, deliberation and premeditation which are the requirements of first degree murder under the statute. *State v. Davis*, 400 S.W.2d 141 (Mo.1966). The evidence would further support a finding that the murder of Howarter was committed during the attempted perpetration of a robbery which would constitute felony-murder under the same section. *State v. Devoe*, 430 S.W.2d 164 (Mo.1968).

■■■ Since Hardin was charged with both conventional first degree murder and felony-murder and the evidence supported a submission of both of these charges, the instructions submitting second degree murder and manslaughter were required by MAI–CR 6.02, Caveat b. In that posture the court did not err in submitting both manslaughter and second degree murder to the jury.

The judgment is affirmed.

All concur.