STATE of Missouri, Respondent,

v.

Wayman Edward ROSEMAN, Appellant.

No. KCD 29657.

Missouri Court of Appeals,
Western District.

June 11, 1979.

C. B. Fitzgerald, Warrensburg, for appellant.

John D. Ashcroft, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Wayman Roseman was convicted of rape, sodomy and armed robbery by a jury on a change of venue and sentenced to a term of ten years each on the rape and sodomy charges and five years for the robbery. On this appeal Roseman contends the court erred in (1) overruling an objection to a question propounded by the State on voir dire; (2) sustaining the State's objection to a defense question on voir dire; (3) limiting cross-examination of a State witness; (4) requiring Roseman to disclose the names of witnesses to be called at trial; and (5) refusing to discharge Roseman because of the insufficiency of evidence. Affirmed.

There was evidence which permitted the jury to find beyond a reasonable doubt the victim of the crimes for which Roseman was convicted went to the lounge in the Sedalia Ramada Inn on the evening of August 8, and left with a man when the

lounge closed at 1:30 A.M. on August 9. Driving a short distance from the Inn, they parked on a gravel road and after spending some time "necking" the couple fell asleep. The evidence is not clear as to whether the man was fully clothed when he fell asleep, but it is uncontradicted the victim wore only a halter top.

While the couple slept, a car containing six young men from Sedalia pulled in the gravel road behind them. One of the men went up to look in the car containing the couple and returned to announce there were two people asleep in the car. Thereupon all six young men, three on each side, approached the couple's car. The man testified he was forced by someone pointing a gun at his head to get out on the driver's side, relinquish his wallet and watch, and then lie on the ground until the men left, at which time he was placed in the seat of his car.

After the victim was forced from the car on the passenger side, the men seized her purse and took $85 and her watch and rings. She was then dragged back opposite the car the young men had arrived in, whereupon the acts of rape and sodomy occurred. The victim testified two separate acts of rape and sodomy were perpetrated upon her.

After these assaults had been committed, the victim feigned unconsciousness. She was then carried to the young men's car. The victim testified that the one who carried her to the car sat down in the front seat and put her across his lap, stated that he wanted to rape her, and ran his hands all over her body, including her private parts, as the car was driven away from the scene. After the car was driven some distance, the group discussed throwing her from a bridge, but finally decided to put her in a ditch. Roseman admitted in his testimony that he took the victim from the car and placed her in a ditch, after which he reentered the car and the group left.

Both the victim and her companion stated that because it was dark they could not identify any of the young men involved. However, in addition to Roseman, two of the six men testified, stating that Roseman had a gun at one time. Roseman admitted someone passed a gun to him, but stated he gave it to someone else. The two men also testified that Roseman was in the front seat with the victim when they left the scene and until Roseman carried her from the car. Roseman, although admitting he put the victim out of the car, testified he rode in the back seat.

■ Roseman first contends the court erred in overruling an objection to a question posed by the State on voir dire examination of the panel. The incident began with the following question:

MR. MacFARLANE: Ladies and gentlemen, I have not told you, of course, all of the facts in this case. There were six black youths in this one car that came up and stopped and I told you four were charged in this case. The two that were not charged are witnesses for the State and they have not been charged with this crime and their testimony is very necessary and critical. Would anybody believe that we have, or tend to disbelieve them, because someone would have a deal if you want to call it a deal, had been made? Would anybody not believe those two, because they have not been charged?

An objection was made on the ground the State was trying to commit the jury. The objection was overruled and the following question was posed by the State:

MR. MacFARLANE: What I'm asking you, is your thoughts on what we call the credibility of those witnesses. Would you tend to disbelieve them, because you think, because some type of deal has been made? Would you tend to disbelieve them for that reason?

Then, you will consider their testimony just as you would the other witnesses and give it proper weight and credence, it that correct?

Thereafter, three members of the panel expressed concern about some people being involved in the affair who had not been charged. After a number of questions on this subject by the three veniremen, the State asked a final question:

MR. MacFARLANE: I want to direct this to the whole panel. The question is really this: If you find it was necessary, or that the State did not bring charges against two people who were otherwise guilty and obtained their evidence, would that preclude you from fairly and impartially considering the evidence that you hear and deciding whether or not the defendant in this case is guilty or innocent?

To this question two veniremen answered in the affirmative and the court struck them for cause, together with the third who had previously raised a question on this subject.

On this appeal Roseman contends the error occurred after the initial question because he says several veniremen became concerned that two men were not charged and the outcome was to impress on the ultimate jury panel an intangible obligation to give these witnesses too much credence. Despite this statement in his brief, in his motion for new trial Roseman complained only generally that the court refused to sustain his objections to questions propounded by the State to the panel. This assignment in the motion for new trial did not set forth in detail and with particularity the specific grounds or causes which it was contended entitled Roseman to a new trial as required by Rule 27.20(a). *State v. Hulsey*, 557 S.W.2d 715, 719[9] (Mo.App.1977). Nevertheless, this court has considered the argument made here and finds no error. It is apparent the State was trying to ferret out any prejudice the panel might have toward the two who were present but not charged solely on the basis no charges were filed. While some of the questions might have been more precisely framed, an examination of the State's entire examination on this question reveals the State was not trying to improperly commit the jury to believe these witnesses but was attempting to determine if the jury would refuse to consider their testimony simply because they had not been charged. It was proper to discover if the panel harbored any prejudice against the witnesses only because they had not been charged. *State v. Campbell*, 543 S.W.2d 518, 519[1–3] (Mo.App.1976).

■ Roseman next contends the court erred in sustaining the State's objection to a question during voir dire. In his motion for a new trial he stated only generally the court erred in sustaining objections to his questions on voir dire. He now argues the court erred when it sustained an objection to a question which asked the panel whether, if each one were a defendant in a criminal case, he would want a person like himself sitting as a juror. Roseman contends the court's ruling on this objection denied him the right to obtain a fair and impartial jury.

Roseman's motion for new trial is as deficient in preserving this point as it was on the first point for the reasons discussed there.

However, it should be noted the court did not err in sustaining the objection to the particular question Roseman now specifies because the question invited the veniremen to judge their own qualifications, which veniremen are not entitled to do. *Union Electric Company v. Turner*, 446 S.W.2d 430, 433[4, 5] (Mo.App.1969).

■ Roseman next contends the court erred in refusing to allow him to cross-examine Dr. Stockwood, who examined the victim after the assault. Roseman's counsel sought to cross-examine the physician in order to show the victim had stated to him that she had undergone an abortion about ten days prior to the assault. Roseman now argues this statement was admissible because the vaginal bleeding found by the physician could have been attributed to the abortion as well as the rape.

During a colloquy when counsel was trying to introduce this evidence, the court inquired whether counsel was contesting the fact that a rape had occurred. Counsel stated he was not contesting that fact. It is stated in 23 C.J.S. Criminal Law § 1028, p. 1120: "Admissions made by an accused or his counsel in good faith and at the trial in open court are accepted in lieu of testimony . . . . ." Here, Roseman on the

one hand admitted there was a rape, the only contest being that he did not commit the act, yet on the other hand tried to introduce evidence to show bleeding was caused by an abortion and not by penetration during a rape. Roseman cannot take such inconsistent positions; his counsel's admission made in good faith in open court that a rape had occurred makes the evidence of an abortion irrelevant. The court did not err in refusing to allow cross-examination on this subject.

■ Roseman next contends Rule 25.34 is invalid in requiring the defense to reveal to the prosecution the names and last known addresses of persons other than defendant who Roseman intended to call as witnesses at any hearing or at the trial, together with their written or recorded statements and existing memoranda, representing or summarizing part or all of their oral statements. Roseman's pretrial motion asserting Rule 25.34 was unconstitutional was overruled. However, in this court Roseman does not mount a constitutional attack on Rule 25.34, but instead asserts the rule is invalid because it violates the work-product doctrine and the attorney-client relationship.

After his pre-trial motion was overruled, Roseman revealed the names of four witnesses—three character witnesses and one of the young men with Roseman at the time of the assault whose deposition had already been taken by the State. In *State v. Hardin*, 558 S.W.2d 804, 807 (Mo.App.1977) this court relied on *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) in holding the production of statements taken by the defense from witnesses under Rule 25.34 did not violate a defendant's constitutional right against self-incrimination. This court further held the production of these statements did not violate the work-product doctrine because such statements did not contain any opinions, theories, or conclusions of counsel, and, therefore, did not require counsel to divulge any information which qualified under the work-product doctrine.

Rule 25.40 provides the court may at any time, on motion and for good cause shown, order that specified disclosures be denied, regulated, restricted or deferred, or make such other order as it deems appropriate. No protective order under this rule was sought in this case. Roseman does not demonstrate in what way the production of the names of the witnesses he intended to call violated the work-product doctrine. If he felt the production of the names of witnesses he intended to call violated the work-product doctrine he could have filed a motion seeking a protective order. On a hearing of such motion the facts giving rise to the contention could be fully developed and this court would have a basis on which to review such a claim. As it is, this court has only the bare assertion that a violation of his rights under this doctrine has occurred. On this record Roseman has not shown his rights under the work-product doctrine were infringed by requiring him to divulge counsel's opinions, theories or conclusions.

Roseman also contends Rule 25.34 violates the attorney-client privilege. This ground was fully explored in *Hardin*. The disclosure of the names of witnesses did not disclose any communication between Roseman and his attorney. Therefore, the disclosure made here did not violate the attorney-client privilege.

■ Roseman finally contends the evidence was insufficient to show he had the required specific intent to commit the crimes alleged and to show he had a common purpose with the other persons involved to commit the crimes alleged. In *State v. Cain*, 507 S.W.2d 437, 440–441[3–10] (Mo.App.1974) the court fully set out the rules to be applied in resolving these contentions. After first observing that the evidence must be viewed most favorably to the State, the court then noted "[a]ll persons who are present at the commission of an offense and participating therein are principals and in such circumstances the act of one is the act of all; all persons who act together with a common intent and purpose in the commission of a crime are equally responsible therefor." The court then fur-

ther explained that "[a]ny evidence showing any form of affirmative participation is sufficient to support a conviction."

While neither the victim nor her companion could identify Roseman or any of the other young men who were present, the testimony of two of Roseman's companions and the testimony of Roseman himself placed Roseman at the scene. From the testimony of his two companions, the jury could have found that Roseman had a gun and helped guard the victim's companion to prevent him from assisting the victim. Further, from the testimony of Roseman's two companions and the testimony of the victim, the jury could have found that Roseman placed the victim on his lap in the car and ran his hands over her body. He admitted he removed her from the car, placed her beside the ditch and reentered the car to make his escape with the others. Clearly, the evidence was sufficient to show Roseman's affirmative participation in the crimes charged.

The judgment is affirmed.

All concur.