STATE of Missouri, Respondent,

v.

Ronald HARMON, Appellant.

No. 10985.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 13, 1979.

John D. Ashcroft, Atty. Gen., Marjorie Wholey Haines, Asst. Atty. Gen., Jefferson City, for respondent.

David Robards, Public Defender, Joplin, for appellant.

TITUS, Presiding Judge.

Charged as a habitual criminal (§ 556.-280 [1] RSMo 1969) with stealing (§§ 560.156 RSMo 1969 and 560.161 RSMo Supp.1975) a 1967 Pontiac Firebird automobile (a General Motors product), defendant was jury-convicted and court-sentenced to a prison term of five years. Defendant appealed.

Defendant's first point relied on: "The trial court erred in overruling defendant's motion to suppress car keys and in admitting over objection, the keys at trial be-

1. Statutes repealed L.1977 S.B. 60 § 1, effective 1-1-79.

cause the keys were obtained by the police from defendant's personal property as a result of an unreasonable, warrantless and unconstitutional seizure."

To understand defendant's first point, the following factual background is necessary. The Pontiac, with keys in the ignition switch, had been left at a Joplin transmission service shop for repairs. Sometime after 10 p. m., March 14, 1977, the car was stolen but was recovered by the police in the early morning hours of March 15, 1977. When recovered, the keys were missing from the car. Defendant was arrested for the theft on the 15th, taken to the Joplin Police Department and subjected to an inventory search before being placed in jail. The search, inter alia, revealed that defendant was possessed of keys for a General Motors vehicle and a key to a gas cap lock. Shortly after the items taken from defendant were put in police storage, an officer, without a search warrant, secured the keys and tried them on the door lock, the trunk lock and the gas cap lock of the stolen Pontiac. They all fit. Defendant's motion to suppress the keys and his trial objections to their introduction as evidence were overruled by the court. As indicated by his first point relied on, supra, defendant asseverates this was error. It is worthy of note that defendant does not claim his arrest was illegal; neither does he question the constitutionality of the inventory search of his person and the retention of the inventoried items by the police in a separate container for safekeeping during incarceration. In substance, defendant is objecting to the warrantless "second look" made by the police of items properly obtained initially via a custodial search.

■ If, incident to a lawful arrest and a subsequent inventory or custodial search of a defendant prior to and reasonably concomitant with incarceration, police obtain objects which are or reasonably may be associated with criminal activity, the official use of such items, within a reasonable time thereafter and without a search warrant, to test or compare their connection to criminal conduct, is not an intrusion into an area where defendant may reasonably expect privacy. Neither does it violate a defendant's constitutional rights to be free from unlawful searches, seizures or self-incrimination. *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), seizure and testing of clothing; *United States v. Grill,* 484 F.2d 990 (5th Cir. 1973), testing inventoried key into lock; *Westover v. United States,* 394 F.2d 164 (9th Cir. 1968) and *United States v. Smith,* 340 F.Supp. 1023 (D.C.Conn.1972), seizure and examining marked or "bait money"; *Golliher v. United States,* 362 F.2d 594 (8th Cir. 1966), seizure and testing of clothing; *State v. Gordon,* 527 S.W.2d 6 (Mo.App. 1975), taking soil from clothing and testing same; *State v. Achter,* 512 S.W.2d 894 (Mo. App.1974), stolen items in abandoned automobile. Defendant's first point relied on is denied.

Defendant's second and last point relied on: "The trial court erred in submitting the case to the jury as the state failed to introduce sufficient evidence which would support a verdict of guilty of stealing a motor vehicle."

■ As written, the point violates the mandatory requirements of Rule 84.04(d), V.A.M.R., because it nowhere undertakes to demonstrate "wherein and why" there was insufficient evidence to support the guilty verdict. *State v. Brown,* 554 S.W.2d 574, 580[15] (Mo.App.1977). However, if the state failed to make a submissible case, then plain error resulted. Therefore, we will briefly review the point bearing in mind that the evidence and all reasonable inferences flowing therefrom are to be viewed in the light most favorable to the verdict. *State v. Haslip,* 583 S.W.2d 225, 227[2, 3] (Mo.App.1979).

As before noted, the owner of the Pontiac took it to the transmission service shop and left it for repairs with the keys in the ignition switch. The car was parked outside the shop and was there at 10 p. m. when the shop owner left for the night. Two and a half to three hours later a witness observed the Pontiac and the operator thereof three times unsuccessfully attempt

to drive it up the grade of a viaduct located a short distance from the transmission shop. The witness was "sure there couldn't have" been more than one person in the Pontiac. The witness saw a man who emerged from the driver's side of the vehicle and walked away from the car with "a crippled walk" to beneath the viaduct. Hailing a passing police car, the witness told the officers what he had observed. Sometime subsequent to the arrival of police, the witness "saw a person fitting the same general description [as the man previously observed], so far as the [crippled] walk is concerned, getting into a cab."

Following police arrival, the Pontiac was inspected and the keys thereto were missing. Shortly thereafter defendant, who identified himself to the police and who the police already knew, was encountered beneath the viaduct. Defendant asked the officers "to call him a cab." The officers obliged and defendant left the scene in the taxi as apparently observed by the witness aforesaid. After the police ascertained the Pontiac had been stolen, they located and arrested defendant and found him possessed of the keys to the stolen vehicle. The owner of the Pontiac testified the reason he had taken the vehicle to the transmission shop for repairs was that "[i]t would only run for four or five blocks, and then it would start slipping and then you would have to sit and let the fluid run into the pump again before it would run again."

"Because circumstantial evidence requires jurors to use an inferential process to determine an ultimate fact, it is appropriate to caution them [by giving MAI–CR 3.42, as was done here] to make certain that their inferences are reasonable, consistent with the guilt of the defendant and inconsistent with any reasonable theory of his innocence." *State v. Lasley,* 583 S.W.2d 511, 516 (Mo. banc 1979). However, "the prevailing circumstantial evidence rule, supra, is realistically tempered in its application since '[i]n a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence[;] . . . the mere existence of other possible hypothesis is not enough to remove the case from the jury.'" *State v. Franco,* 544 S.W.2d 533, 534–535[3] (Mo. banc 1976).

■ From the evidence presented, the jury could reasonably infer the Pontiac had been stolen from the transmission shop after 10 p. m. March 14 and before 12:30 or 1 a. m. March 15, at which time, because of mechanical malfunctioning, it was not capable of being driven over the viaduct. The witness who observed this sequence of events also saw a man, whom he believed to be its lone occupant, leave the automobile and go beneath the viaduct with a "crippled walk." Later, the police observed defendant come from under the viaduct and depart in a taxi they had summoned at his request. The witness said the taxi entrant (identified by police as the defendant) had "the same walk" as the man he had previously seen leaving the Pontiac. Thereafter, inspection of the Pontiac revealed the keys thereto were missing therefrom and these keys were subsequently found in defendant's possession. From the foregoing the jury could reasonably infer it was defendant who, as the stealer-driver of the Pontiac, unsuccessfully tried to drive it over the viaduct, abandoned his efforts because of mechanical failure, removed and took possession of the car keys, left the Pontiac, walked beneath the viaduct and later appeared therefrom to leave the scene in a police-summoned taxi. Defendant's exclusive and unexplained possession of a recently stolen automobile, when coupled with his exclusive and unexplained possession of the keys thereto, authorized an inference of knowledge that the vehicle was stolen. *State v. Costello,* 546 S.W.2d 22, 24[5] (Mo. App.1976). Albeit, under the circumstances in this case, the permissible inferences are not of themselves conclusive, they need not demonstrate an absolute impossibility of innocence. *State v. Aguilar,* 429 S.W.2d 754, 757 (Mo.1968). When the facts are considered in conjunction with the permissible inferences, they point satisfactorily and clearly to defendant's guilt and exclude every reasonable hypothesis of innocence.

Judgment affirmed.

All concur, except PREWITT, J., not participating because not a member of the court when cause was submitted.