**STATE of Missouri,
Plaintiff-Respondent,**

**v.**

**Donald HARDEN, Defendant-Appellant.**

**No. 43517.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 15, 1982.

Motion for Rehearing and/or Transfer
Denied Sept. 17, 1982.

Application to Transfer Denied
Oct. 18, 1982.

Michael J. Gorla, Asst. Public Defender, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Nancy J. Appelquist, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

Defendant was convicted of five counts of robbery, first degree, § 569.020, RSMo 1978. On each of the first four counts, he was sentenced to 10 years, to be served consecutively. On the fifth count, he was sentenced to 10 years, to be served concurrently with the sentence on Count I. Defendant appeals. We affirm.

Defendant raises three points on appeal. He contends the trial court erred (1) in failing to grant his motion to suppress evidence obtained by a warrantless search; (2) in admitting into evidence a gun which was found near him at the time of his arrest; and (3) in admitting into evidence a wristwatch found in the possession of a co-defendant and identified as an item taken during the robbery.

On February 29, 1980, five victims at the Bee Line Truck Company were robbed by three men. On March 6, 1980, defendant and another man, Haven Herring, were arrested together on a charge unrelated to the Bee Line Truck Company robberies. At the time of the arrest, the police seized a gun which was on a windowsill approximately one foot from defendant. As part of the routine prisoner processing, both defendant and Herring were required to turn over valuables on their person to the booking officer for safekeeping. The booking officer inventoried two rings and an Elgin watch as part of defendant's personal property and inventoried a Seiko watch as part of Herring's property. While defendant remained in custody, Herring gave the police information which implicated defendant in the Bee Line Truck Company robberies. Herring released to the police the Seiko watch from his property envelope and acknowledged that it was taken from a Bee Line employee during the robberies. He also told the police that the jewelry in defendant's personal property envelope was taken during the same robberies. Subsequently, under the ostensible authority of a subpoena duces tecum, the police obtained defendant's property envelope and seized the jewelry contained in it. Defendant, Herring and a third man were charged with the Bee Line Truck Company robberies. In his case, defendant filed a motion to suppress the jewelry as the product of an illegal search and seizure. This motion was denied.

At trial, the state's evidence revealed that three men took part in robbing the employees of Bee Line Truck Company. Two of the victims identified defendant as a participant in the robberies. One of the victims testified that defendant was armed with a "chrome" or "silver" barreled gun, and the gun seized at defendant's arrest "looked like" and "had the same appearance" as the gun used in the robberies. The two rings and Elgin watch seized from defendant's property envelope and the Seiko watch released by co-defendant Herring were identified as part of the robbery loot and all were admitted into evidence over defendant's objections.

■ Defendant first challenges the search of his property envelope and the seizure of the jewelry it contained. Defendant argues this search and seizure violated his right to a reasonable expectation of privacy guaranteed by the Fourth Amendment. Defendant admits the jewelry in question was viewed and inventoried by the police during the booking process. Nonetheless, defendant argues, once the booking process was completed and the jewelry placed in a sealed, opaque envelope, he had a reasonable expectation of privacy that the jewelry would thereafter be free from a warrantless search. We disagree.

The subpoena duces tecum used to seize the jewelry in question was invalid process. The parties do not dispute this. Thus, the jewelry was seized during a warrantless search. The question here is whether the jewelry taken during the inventory search remained "fair game" for a warrantless search while defendant was incarcerated. 2

LaFave, Law of Search and Seizure, § 5.3(b), p. 311 (1978).[1]

The Supreme Court appeared to give an affirmative answer to this question in *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). In *Edwards,* the defendant was arrested late at night for attempting to break into a United States Post Office. The following morning the police took his clothing from him. Paint chips found on his clothes matched those found at the scene of the crime and were admitted into evidence. In validating this search, the Court stated: L.C. 807–808

> "[O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. *This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial.* The result is the same where the property is not physically taken from the defendant until sometime after his incarceration." (Emphasis added).

Given the facts of *Edwards,* the reach of this language is uncertain. However, the Court's assumption appears to be that when an item lawfully comes into plain view during an inventory search and later investigation establishes that this item has evidentiary value and "the item remains in police custody as a part of the arrestee's inventoried property, then it is permissible for the police, without a warrant, to retrieve that object and thereafter deal with it as an item of evidence." 2 LaFave, *supra* at 315. Our courts, *e.g., State v. Harmon,* 587 S.W.2d 355, 356 (Mo.App.1979); *State v. Gordon,* 527 S.W.2d 6, 8–9 (Mo.App.1975); *State v. Achter,* 512 S.W.2d 894, 905 (Mo. App.1974) and the majority of the federal courts, *e.g., United States v. Jenkins,* 496 F.2d 57, 73 (2d Cir. 1974); *United States v. Grill,* 484 F.2d 990, 991 (5th Cir. 1973) follow this interpretation. The reasoning used by these courts is direct and straight forward. The courts reason that the items in question are first viewed under unobjectionable circumstances during an inventory search. This view dissipates any reasonable expectation of privacy and, thus, a second look cannot breach a reasonable expectation of privacy. As stated in *State v. Achter:* L.C. 905

> "Once items have been exposed to police view under unobjectionable circumstances (inventory) then no reasonable expectation of privacy is breached by an officer taking a second look at such items."

Defendant's complaint against the warrantless search has no merit.

Defendant next contends the court erred in admitting into evidence the gun found next to him at the time of his arrest. He argues the state failed to connect the gun to the crimes charged. We disagree.

■ Admittedly, the state is not permitted to introduce evidence seized during the arrest of a defendant unless the evidence is probative in establishing the defendant's guilt. *See, e.g., State v. Myrick,* 473 S.W.2d 402, 404 (Mo.1971). However, a weapon seized during an arrest is relevant and probative and, therefore, admissible if it is shown to be the weapon used during the commission of the crime or a weapon similar to it. *E.g., State v. Nylon,* 563 S.W.2d 540, 542 (Mo.App.1978); *see also State v. Cuckovich,* 485 S.W.2d 16, 23 (Mo. banc 1972). The identification of the weap-

---

1. LaFave points out that this question can be broken down into at least two issues. "One is whether a warrant is ordinarily to be required for such a search, and the other is whether such a search may be made only upon probable cause that evidence of crime will thereby be discovered." LaFave, *supra* at 313–314. Our focus here is on the warrant issue only. Co-defendant Herring provided the probable cause for the search when he told the police the jewelry in defendant's property envelope was taken in the robberies.

on need not be entirely unqualified. The weight to be given to the identifying testimony is for the jury. Thus "[t]estimony concerning an exhibit that it 'looks like,' 'looks familiar,' 'very much like,' 'very similar,' etc., to an involved object, has been held sufficient to warrant its admission into evidence." *State v. Ridinger,* 589 S.W.2d 110, 113 (Mo.App.1979).

■ The gun in question was found one foot from the defendant at the time of his arrest. At trial, a victim testified that defendant committed the robbery with a "chrome" or "silver" barreled gun which "looked like" and "had the same appearance" as the gun seized during defendant's arrest. By establishing the similarity between the gun seized during the arrest and the gun used to accomplish the robberies, the state established the logical relevance of the gun seized. *State v. Nylon, supra* at 542. Therefore, admitting the gun seized into evidence was proper.

Defendant's final complaint centers on the Seiko watch taken during the robberies. During the course of the robberies, defendant held the gun and shouted instructions while Herring took the Seiko watch from a Mr. DuBois. Defendant was charged with robbing DuBois of his money, coat and two rings but not his watch. Defendant contends the trial court erred in admitting the Seiko watch into evidence and in admitting testimony which identified the watch as being taken by Herring. Defendant asserts the watch and related testimony implicated Herring only and, thus, this evidence was irrelevant to defendant's guilt. Defendant argues the admission of this evidence permitted the jury to infer Herring's guilt and, because defendant was arrested with Herring, the jury was permitted to further infer defendant's guilt by association.

■ Defendant's argument is misdirected and, thus, misses the mark. As noted, defendant held a gun and shouted instructions while Herring took the Seiko watch from Mr. DuBois. Admittedly, this was evidence of another crime—a crime for which defendant, although a participant, was not charged. Normally, the state cannot introduce evidence of a crime other than the crime with which defendant is charged. *E.g., State v. Wright,* 582 S.W.2d 275, 277 (Mo. banc 1979). There are, however, well defined exceptions to this rule. One exception, applicable here, permits the state to complete the story of the crime by proving the circumstances immediately attending the crime. *E.g., State v. Parton,* 487 S.W.2d 523, 527 (Mo.1972); *State v. Adams,* 465 S.W.2d 536, 539 (Mo.1971). Thus, when a defendant commits a series of crimes as part of the same transaction, the state is not required to sift and separate the evidence into precise, discrete parts and exclude the crime for which the defendant is not on trial. *State v. Sinovich,* 329 Mo. 909, 46 S.W.2d 877, 880 (1931). As the court stated in *Sinovich:* L.C. 880

"When a defendant in the course of the perpetration of one crime commits another, the state is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which he is not on trial, when it forms part of the res gestae of the crime charged."

Here, the state was not required to sift, separate and exclude the evidence of DuBois being robbed of his Seiko watch.

Judgment affirmed.

SMITH, P. J., and PUDLOWSKI, J., concur.